## GOODWIN v. FOX.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 168. Argued January 18, 21, 1889. — Decided March 5, 1889.

By a written agreement between two parties, one acknowledged that he was indebted to the other in the sum of $70,000. "over and above all discounts and set-offs of every name and nature;" and it was stated that the latter was to take up and satisfy certain other indebtedness of the former, and that the former had conveyed to the latter a stock of goods, and store-fixtures, notes, books and accounts, and a piece of land, "with power forthwith, at such times and in such manner as" the latter should "deem best, to convert the said goods," "fixtures, notes, accounts and premises into money, and apply the proceeds to the payment of said indebtedness," with interest, and also a certain farm; and it was agreed that if the former should, within six months from date, pay said indebtedness, the latter would reconvey the farm, but, in default of such payment, might foreclose "the certain mortgage comprised in" the conveyance of the farm and the agreement. The conveyances mentioned in the agreement were made, and the title to the piece of land and the farm and the right to the indebtedness, came into the hands of the plaintiff, who sold the land, and

brought this suit in equity against the original debtor for an account of the amount due on the security of the farm, and for a foreclosure of the debtor's equity of redemption in the farm : *Held*,

(1) The debtor could not go behind the agreement fixing the debt at $70,000, because there was no sufficient evidence to impeach it, on the ground that his signature was obtained by fraud or duress, or without his full knowledge of its provisions and consent to its terms ;

(2) The debtor was entitled to be credited only with the sums realized by the creditor from the sale of the personal property and piece of land, and not with sums estimated, by testimony, as their value at the time of the agreement;

(3) Under the statute of Illinois, where the transaction took place, the creditor was entitled to interest on the $70,000 from the expiration of the six months, and on the amount paid by him on the other indebtedness from the time of paying it;

(4) The amount of a mortgage given by the creditor on the farm was to be credited to the debtor and paid by the farm.

Section 858 of the Revised Statutes in regard to the exclusion of a party to a suit as a witness, makes every party a competent witness except in cases covered by the proviso to the section.

IN EQUITY. The case is stated in the opinion of the court.

*Mr. Charles H. Wood* for Kate W. Goodwin and Charles S. Goodwin, appellants.

*Mr. John N. Jewett* filed a brief for Sarah E. R. Smith and Charles M. Smith, appellants.

*Mr. William C. Goudy* for appellees.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

On the 20th of February, 1869, a written agreement was executed by Samuel H. Fox and I. Willard Fox, to which was appended a memorandum signed by Samuel H. Fox, the papers being as follows :

"Whereas I. Willard Fox is indebted to Samuel H. Fox and Henry W. Fox, partners doing business under the firm name and style of Fox & Co., in the sum of seventy thousand dollars, ($70,000,) over and above all discounts and set-offs of every name and nature; and whereas said Fox & Co., at the request of said I. Willard Fox, have taken up and satisfied, or [are]

about to take up and satisfy, certain other of the indebtedness of said I. Willard Fox, some of such indebtedness, and to the amount of about sixteen thousand dollars, ($16,000,) more or less, being satisfied by payment thereof, and to the amount of about thirty thousand dollars, ($30,000,) more or less, being so satisfied by payment at the rate of fifty cents on the dollar, whereby the said I. Willard Fox has become further indebted to said Fox & Co.; and whereas the said I. Willard Fox has sold and conveyed to the said Samuel H. Fox all and singular the stock of goods, wares and merchandise with the store fixtures, in the city of Chicago, including therewith his notes, books and accounts of every name, nature and description, and also the premises known as No. 376 North La Salle Street, being lot two (2) in block twenty (20), in Bushnell's Addition to Chicago, Illinois, in said city of Chicago, with power forthwith, at such times and in such manner as he, said Samuel H. Fox, shall deem best, to sell and collect and convert the said goods, wares, merchandise, fixtures, notes, accounts and premises into money, and apply the proceeds to the payment of said indebtedness to said Fox & Co., both said original indebtedness and that so taken up by them, at the rate paid therefor, with such interest added thereto as the said Samuel H. Fox or Fox & Co. shall have to pay thereon, or on any portion thereof, and has also conveyed to said Samuel H. Fox his farm in Lake County, Illinois, known as the Lake Zurich farm: Now, therefore, the said Samuel H. Fox agrees, that if the said I. Willard Fox shall and will, within six months from the date hereof, pay the entire amount of each name and kind of said indebtedness, or such portion thereof as remains at that time unpaid, then he, said Samuel H. Fox, shall and will reconvey the said Lake Zurich farm to said I. Willard Fox, but in default of such payment it is hereby agreed by the parties hereto that the said Samuel H. Fox may immediately foreclose the certain mortgage comprised in said conveyance of said Lake Zurich farm and this agreement.

"And the said I. Willard Fox hereby agrees, that, in case proceedings for such foreclosure be commenced, that he will interpose no defence thereto, nor attempt, by injunction, bill in equity, or in any other way, to hinder or defeat the same.

"Witness the hands and seals of the said Samuel H. Fox and I. Willard Fox, this twentieth day of February, A.D. 1869.

"SAMUEL H. FOX. [SEAL.]
"I. WILLARD FOX. [SEAL.]

"And the said Samuel H. Fox hereby agrees to release a certain mortgage which he has on a portion of said Lake Zurich farm, the indebtedness secured by said mortgage having become merged in said debt of seventy thousand dollars.

"SAMUEL H. FOX."

By deeds in fee simple, I. Willard Fox and his wife conveyed to Samuel H. Fox the North La Salle Street lot and the Lake Zürich farm, mentioned in the above agreement, simultaneously with its execution.

On the 17th of February, 1877, Kate W. Fox brought a suit in equity, in the Circuit Court of the United States for the Northern District of Illinois, against I. Willard Fox and his wife. Kate W. Fox was the widow of Henry W. Fox, who, with Samuel H. Fox, composed the firm of Fox & Co. Henry W. Fox had died in 1876, and by his will Kate W. Fox was made his sole executrix and sole devisee. In her bill she set forth the contents of the above agreement, without stating that it was in writing. The bill averred that, in pursuance of the agreement, Fox & Co. paid the $16,000 and the $30,000 of the indebtedness of I. Willard Fox, named in it; that I. Willard Fox and his wife executed and delivered to Samuel H. Fox deeds in fee simple of the Lake Zurich farm and the La Salle Street lot; and that I. Willard Fox assigned to Samuel H. Fox the goods, wares and merchandise, store fixtures, notes and accounts, mentioned in the agreement.

The bill also alleged that it was then further agreed between I. Willard Fox and Fox & Co., that the former should carry on his business, which was at Chicago, Illinois, in connection with the said stock of goods, wares and merchandise, notes and accounts, as though no such assignment thereof had been made to Samuel H. Fox; that Fox & Co., who were manufacturers of glass, in the State of New York, should advance and

furnish to I. Willard Fox goods in the way of his business, from time to time, as he should need and they should be able; that the price or value of the goods so furnished should be added to the indebtedness so due from I. Willard Fox to Fox & Co., and the former should apply the proceeds and avails of the business, as he should realize the same, to the payment of such indebtedness, until such future time as should be agreed upon by the parties, at which time he should turn over and deliver to Samuel H. Fox the merchandise which should then be on hand, the store fixtures, and the notes and accounts then uncollected, the proceeds and avails of which should then be applied by Samuel H. Fox towards the payment of the indebtedness which should then be due from I. Willard Fox to Fox & Co.; and that the original agreement should in all other respects remain binding.

The bill further averred, that, in pursuance of the last-mentioned agreement, I. Willard Fox continued to carry on his business until about February 20, 1870, that is, for about one year, in connection with the said stock of goods, store fixtures, and notes and accounts; that, during that period, Fox & Co. furnished to him merchandise, in the way of his business, to the amount of about $24,000; that, at the expiration of that period, he, in pursuance of that agreement, turned over and delivered to Samuel H. Fox the stock of goods, store fixtures, notes and accounts, then on hand, of the value of $27,343.07, which amount was then credited to him and applied on his indebtedness then due to Fox & Co.; that, after the making of the last-mentioned agreement, and while I Willard Fox was so carrying on business, he paid out of its avails, upon his indebtedness to Fox & Co., the sum of about $10,000; that Samuel H. Fox, some time before September 1, 1875, sold the La Salle Street lot and realized from it about $14,000, which amount was credited upon the indebtedness of I. Willard Fox to Fox & Co.; that the said sums of $27,343.07, $10,000, and $14,000, were all that had ever been paid on said indebtedness; and that there was due to the plaintiff, at the time of filing the bill, on account of said indebtedness, about $70,657, besides interest.

The bill further alleged that, on or about September 1, 1875, Samuel H. Fox and Henry W. Fox dissolved their partnership, and it was agreed that the debt due from I. Willard Fox to Fox & Co., and all securities therefor, should thereafter belong to Henry W. Fox; that Samuel H. Fox executed and delivered to Henry W. Fox a deed in fee simple of the Lake Zurich farm, a description of which by metes and bounds was given in the bill; and that there was due to the plaintiff, as such executrix and devisee, from I. Willard Fox, $103,600, principal and interest.

The bill waived an answer on oath, and prayed for an account of the amount due to the plaintiff for principal and interest on the security of the Lake Zurich farm; that the defendants be decreed to pay that amount, the plaintiff offering to reconvey the premises to them on such payment; and that, in default of such payment, the defendants be barred and foreclosed of all equity of redemption in and to such mortgaged premises. The bill contained a prayer for general relief, although it did not pray specifically for the sale of the Lake Zurich farm; nor did it treat the La Salle Street lot as being subject to a like mortgage with the Lake Zurich farm, but only as being subject to be sold by the grantee under the power contained in the agreement, the proceeds of sale to be applied upon the indebtedness.

On the 21st of April, 1877, I. Willard Fox and his wife put in an answer to the bill. It denies the indebtedness of $70,000, but admits that a paper drawn up at the instance of Samuel H. Fox stated the indebtedness at that amount. It also avers, that, prior to February 20, 1869, I. Willard Fox had been engaged at Chicago for several years in selling paints, oils and window glass; that during that time he had sold for Fox & Co. large quantities of window glass made by them, such sale being upon commission; that he never regarded himself as purchasing the glass in the ordinary way; that a short time prior to February 20, 1869, he became embarrassed; that then Fox & Co., under the pretence of making a favorable settlement with some of his creditors, forced him to enter into an agreement, wherein he was apparently made to say that he

owed Fox & Co. the $70,000, but which did not state truly such indebtedness, the amount being made up for a specific purpose on the part of Fox & Co., without his consent; that, in making up the $70,000, interest was, without his consent, calculated for several years back on all pretended balances apparently due to Fox & Co., every three months during each year, thereby compounding interest; that the amount of such interest was $20,000 or $30,000; that after the agreement was signed, Fox & Co. allowed him to go on in business, using his own name, for about the period of one year, but the business was really theirs, and he turned over to them his store and its contents, and all the debts due to him, on or about February 20, 1869, the contents of the store being then of the value of over $60,000; that, in equity, under such arrangement, that property ought to go to the cancellation of the indebtedness stated in the agreement, and Fox & Co. ought to be charged in the accounting with the property so delivered to them, at its fair value; that Fox & Co. pretend that the business was conducted by him after February, 1869, and, because there were losses in it to the amount of $15,000, he ought to suffer that loss, when the business was really that of Fox & Co., and the adjustment ought to be made at the time of the turning over of the store and its contents, and of his property, to Fox & Co., and he ought to be allowed to set off against any indebtedness of his to Fox & Co. the amount of property so turned over to them; that he was the owner in fee simple absolute of the land described in the bill; that whatever debt is due to Fox & Co. is a lien upon the same, including the La Salle Street lot, in the nature of a mortgage, and the land ought in equity to be subjected to such lien, if any indebtedness is proved to exist in favor of Fox & Co.; and that the plaintiff stands in no different relation to him, in regard to such indebtedness, from that occupied by Fox & Co., and has only the same rights and interest in and to such security which Henry W. Fox or Fox & Co. had.

The answer asks that an accounting may be had between the parties before a master, and avers that all indebtedness from I. Willard Fox to Fox & Co. has been paid; and that

both the Lake Zurich farm and the La Salle Street lot are free from any lien in favor of Fox & Co. or of the plaintiff. It avers that the goods furnished by Fox & Co. to I. Willard Fox, after the 20th of February, 1869, were the goods of Fox & Co., and he conducted the business for them; that the indebtedness held against him by other persons, and which was settled by Fox & Co., amounted to $24,000, and was settled for about $12,000 by Fox & Co.; that he also owed the First National Bank about $15,000, which was paid out of the proceeds of a loan of $6000 made on the La Salle Street lot, and the rest of it out of the collections, etc., due to I. Willard Fox; and that, such indebtedness having been so settled out of the La Salle Street lot and a portion of the property turned over by him to Fox & Co., he ought to have the Lake Zurich farm free from encumbrance, because of the large surplus which was left in the hands of Fox & Co. after paying such outstanding debts. The answer also avers that he will rely upon the statute of Illinois in regard to usury.

A replication was filed to this answer.

On the 26th of October, 1877, the plaintiff filed an amended bill, under an order made on that day, giving her leave to do so, and requiring the defendants to answer within thirty days. The amended bill is a full and complete bill in itself. It contains mainly the same averments as the original bill, but has some variations and additions. One addition is a statement of the contents of the memorandum signed by Samuel H. Fox, appended to the agreement, which was not contained in the original bill. There is also added a statement that Samuel H. Fox did, on the 5th of October, 1869, release and discharge of record the mortgage so held by him on a portion of the Lake Zurich farm. It states the amount of goods furnished by Fox & Co. to I. Willard Fox, during the time from February 20, 1869, until some time in December, 1869, at $12,999.64, instead of $24,000; and that the property, amounting to $27,343.07, was turned over and delivered to Fox & Co. in December, 1869, instead of in February, 1870. It also states that the indebtedness mentioned in the agreement as $16,000 was in fact only $15,000, and was due to the First National Bank of Chi-

cago; that, after the making of the agreement and the convey-
ance of the La Salle Street lot to Samuel H. Fox, he, with the
knowledge of I. Willard Fox, raised, by mortgage on that lot,
about $6000, which was handed over to I. Willard Fox and
paid by him on the indebtedness to the bank, and that after-
wards, and during the time that he carried on the business
after February 20, 1869, he paid to the bank the remainder of
the debt due to it, out of the avails of the business and of col-
lections of the notes and accounts; that the indebtedness esti-
mated in the agreement at about $30,000, due to other parties,
was only about $24,000 or less, and Fox & Co. compromised
and paid it in full by paying altogether the sum of about
$10,971.39; that, about the time that Samuel H. Fox mort-
gaged the La Salle Street lot for $6000, he effected an insur-
ance upon the improvements upon it for the same amount, and
afterwards the improvements were destroyed by fire, and the
insurance was applied in discharge of the mortgage; that, on
the 25th of September, 1875, Samuel H. Fox conveyed the La
Salle Street lot to Henry W. Fox for the sum of $8000, which
amount was then credited upon the indebtedness of I. Willard
Fox to Fox & Co.; that the $27,343.07, which was the value
of the stock of goods, store fixtures, notes and accounts,
turned over to Samuel H. Fox in December, 1869, and the
$8000 realized from the sale of the La Salle Street lot, is all
that has ever been received by Fox & Co. on the debt from I.
Willard Fox to them; and that there was due to the plaintiff
at the time of the filing of the amended bill, on account of such
debt, about $60,000, besides interest.

The amended bill states the amount due to the plaintiff, as
executrix and devisee, from I. Willard Fox, at about $100,000,
principal and interest, instead of $103,600. It waives an
answer on oath, and its prayer is the same as that of the orig-
inal bill, and it does not treat the La Salle Street lot as subject
to a lien in favor of the plaintiff.

No answer to such amended bill appears in the record, nor
is there any stipulation that the answer to the original bill
shall stand as the answer to the amended bill.

On the 10th of September, 1878, an order was made refer-

ring the cause to Mr. Henry W. Bishop as a master, to take proofs and report the same to the court, together with the amount due to the plaintiff.

On the 11th of February, 1880, an order was made, modifying such order of reference, by directing the master to report the testimony taken by him, and not his conclusions thereon.

Plenary proofs were taken in the cause, in July, 1877; November, 1878, September, 1879, November, 1879, December, 1879, and February, 1880. Samuel H. Fox gave a deposition in July, 1877, a second in September, 1879, and a third in December, 1879. I. Willard Fox gave a deposition in November, 1878, a second in November, 1879, and a third in February, 1880. Robert B. Merritt, who had been the book-keeper and cashier of I. Willard Fox from May, 1867, till the summer of 1869, gave a deposition in September, 1879, and a second in December, 1879.

In July, 1880, the cause was heard on pleadings and proofs; but before any decision was made, and on November 13, 1880, the plaintiff, by leave of the court, amended her bill by inserting an averment to the effect that the agreement of February 20, 1869, contained a recital that I. Willard Fox had sold and conveyed to Samuel H. Fox the La Salle Street lot, the proceeds thereof to be applied towards payment of the indebtedness from I. Willard Fox to Fox & Co.; that by such agreement that lot was not in any event to be reconveyed to I. Willard Fox; that the plaintiff had sold and conveyed the lot; and that, being willing to do what was just and equitable, she offered to credit and allow to I. Willard Fox the amount for which she had sold the lot, or otherwise its value, in reduction of the sum due to her from I. Willard Fox.

On the 23d of November, 1880, the defendants filed an answer to the amended bill as amended on November 13, 1880. This appears to be a full answer, not only to the amendments of November 13, 1880, but to the amended bill filed October 26, 1877. This answer avers that, on February 20, 1869, I. Willard Fox and his wife executed to Samuel H. Fox a deed conveying the Lake Zurich farm, and another deed conveying

the La Salle Street lot; and that at the same time the agree-
ment of February 20, 1869, was executed by Samuel H. Fox
and I. Willard Fox, and the memorandum appended was exe-
cuted by Samuel H. Fox. The answer also avers, that prior
to 1857, Samuel H. Fox and I. Willard Fox were partners in
business in the manufacture of glass, in the State of New
York; that I. Willard Fox sold out his interest in the business.
to Henry W. Fox and retired; that, thereupon, Samuel H.
Fox and Henry W. Fox, who were brothers of I. Willard Fox,
became partners and conducted the business under the name
of Fox & Co., and I. Willard Fox removed to Illinois; that
the affairs of the firm in which I. Willard Fox was such part-
ner, and his business transactions with the new firm, had never
been settled; that in the year 1865, I. Willard Fox, at the
request of Fox & Co., undertook to act as their agent for the
sale of glass in Chicago, and was to receive as compensation
a certain commission; that he received from them large
amounts of glass and remitted the proceeds to them from time
to time, and the business was thus conducted until about the
1st of January, 1869, when he became embarrassed, and, under
a judgment and execution against him in favor of the First
National Bank of Chicago, his goods, and the glass then on
hand, belonging to Fox & Co., for sale on commission, were
seized, and the store was closed; that Samuel H. Fox then
came to Chicago and acted for Fox & Co.; that by agreement
with I. Willard Fox, Fox & Co. assumed the payment of the
debt to the First National Bank, and the goods were released,
and Samuel H. Fox, for Fox & Co., took possession of the
goods belonging to I. Willard Fox, and of those belonging to
Fox & Co.; that Samuel H. Fox also undertook to satisfy the
other creditors of I. Willard Fox; that the latter was unable.
to pay more than fifty cents on the dollar, and, for the purpose
of doing so, and also of placing Fox & Co. in a situation
whereby they could make it appear to their creditors that they
had large assets in. Illinois, Samuel H. Fox prepared a state-
ment of the account of Fox & Co. against I. Willard Fox,
showing an apparent indebtedness of about $68,000, besides
an apparent mortgage of $15,000 from him to them, and de-

manded of him that he should make an absolute conveyance
of the Lake Zurich farm and the La Salle Street lot; that he
denied the correctness of such account and at first refused to
make the conveyances, but was induced to execute them, pro-
vided Samuel H. Fox would execute the instrument of Feb-
ruary 20, 1869, as a condition of defeasance, and upon the
verbal assurance of Samuel H. Fox that Fox & Co. would not
insist upon the payment of the $70,000 named in it, or of any
sum other than that which should be found to be due from I.
Willard Fox to Fox & Co., on a just, fair and equitable settle-
ment; that the defendants asserted at the time that there was
nothing due on the transactions covered by the account; that,
after the deeds and the agreement were made, Samuel H. Fox,
for Fox & Co., retained possession of the goods, store fixtures,
notes and accounts, and conducted the business in the name
of I. Willard Fox until December, 1869, and during that time
received the proceeds arising from the collections of the notes
and accounts, as well as the goods; that at the time of such
transfer to Fox & Co., there was in the store glass belonging
to them, of the value of over $30,000, besides other goods of
over the value of $30,000, and notes and accounts, good and
collectible to the amount of about $15,000, belonging to I.
Willard Fox; that, during the time the business was so being
conducted by Fox & Co., in 1869, they paid the debt to the
First National Bank, partly from the proceeds arising from the
conduct of the business and partly from money borrowed upon
the La Salle Street lot, which was afterward refunded to them
by insurance money collected upon the building standing upon
the lot, and which had been destroyed by fire; that they also
paid to the other creditors of I. Willard Fox, in full satisfac-
tion of the debts due to them, $10,971.40; that there had been
no settlement of the matters between Fox & Co. and I. Wil-
lard Fox since February 20, 1869; that there is nothing due
from him to Fox & Co.; that the La Salle Street lot was con-
veyed, like the Lake Zurich farm, as security; that, if such
lot has been sold pending the suit, its purchaser has taken it
with notice of the equitable rights of the defendants; that
they claim a reconveyance of the Lake Zurich farm and the

La Salle Street lot upon the payment of the amount, if any, due to Fox & Co. from I. Willard Fox; and that Samuel H. Fox is a necessary party to the litigation.

On the 8th of December, 1880, the defendants, by leave of the court, filed a cross-bill against the plaintiff, who had then become Kate W. Goodwin by her intermarriage with Charles S. Goodwin, and against her husband, and against Sarah E. R. Smith, who had become the purchaser of the La Salle Street lot, and her husband, Charles M. Smith. The cross-bill sets forth the prior proceedings in the original suit, and prays that the original bill and the answer to it, and the amended bill filed October 26, 1877, and the amendment to it filed November 13, 1880, and the answer filed November 23, 1880, may be taken as a part of such cross-bill.

The cross-bill contains, in substance, the material averments of the answers before filed, with the further statement, that, in December, 1869, the remainder of the stock on hand in the store of I. Willard Fox was sold for the sum of about $28,000, and the money received by Fox & Co.; that the money received during the time the store was conducted by Fox & Co., from the time they took possession to the time it was closed in December, 1869, amounted to more than $50,000; that Fox & Co. were liable to I. Willard Fox for the amount of the glass returned to Fox & Co. at the time they took possession of the store, and also for the money received from the notes and accounts and the sale of glass during the time the business was conducted by Fox & Co.; that such amounts would more than pay any charges of Fox & Co. against I. Willard Fox; that, about the 1st of September, 1875, Samuel H. Fox and Henry W. Fox dissolved partnership, and the former conveyed to Henry W. Fox the said real estate, but the latter had full notice of the rights and equities of the cross-plaintiffs in the premises, and was not a *bona fide* purchaser thereof; that Kate W. Goodwin and her husband, on the 7th of April, 1880, conveyed the La Salle Street lot to Sarah E. R. Smith; and that she received the conveyance of it with notice of the rights and equities of the cross-plaintiffs to the premises, and pending the suit.

The cross-bill waives an answer on oath, and prays for an account of all matters between Fox & Co. and I. Willard Fox, and between Samuel H. Fox as surviving partner of Fox & Co. and I. Willard Fox, and for a decree against Samuel H. Fox as the surviving partner of Fox & Co., for the amount that may be due from him as such surviving partner to I. Willard Fox, and also for a decree against Kate W. Goodwin, requiring her and her husband to reconvey the Lake Zurich farm, and for a decree against Sarah E. R. Smith requiring her and her husband to reconvey the La Salle Street lot, and that, if it shall appear that there is any sum due from I. Willard Fox to Samuel H. Fox as surviving partner of Fox & Co., or to Kate W. Goodwin, a decree be entered requiring a reconveyance of such real estate on the payment of the amounts found to be due from I. Willard Fox ; and for general relief.

On the 20th of December, 1880, Kate W. Goodwin and her husband answered the cross-bill. Their answer contains the material averments found in the original bill and the amended bills, and in addition alleges, that the defendants in the cross-suit were not parties to the agreement of February 20, 1869, or to the transactions out of which the same arose; that it is incompetent for I. Willard Fox to show either a want of consideration or a failure of the consideration upon which such agreement was founded; that, as I. Willard Fox wholly failed to comply with the terms of such agreement, by making payment within the six months therein limited, and the property was thereafter conveyed to Henry W. Fox in consideration of his interest in the assets of Fox & Co. and the same was thereafter devised to Kate W. Goodwin, I. Willard Fox is estopped from denying that the $70,000 recited in the agreement was due at its date; that, when I. Willard Fox retired from his partnership with Samuel H. Fox, in August, 1857, he left the concern largely in debt, and left Samuel H. Fox to close up the old business, collecting what he could and paying the debts; that, in the meantime, the new firm advanced money to I. Willard Fox, until April, 1862, when the old matters were settled up, and I. Willard Fox acknowledged in writing an indebtedness to Fox & Co. of $5584.82, on his personal account;

besides between $7000 and $8000, which that firm had then advanced or were to advance to him, on security to be given on the Lake Zurich farm; that the glass shipped to I. Willard Fox by Fox & Co., in 1865, and for several years afterward, was sold to him, and was not shipped to him on commission; that, in 1869, I. Willard Fox was indebted to Fox & Co. in nearly $100,000 for glass sold to him by them, from 1865 to 1869; that there was no dispute about the amount due to Fox & Co. by I. Willard Fox, which was stated at $70,000 in the agreement of February 20, 1869; that, in fact, $20,000 more was due from him to them at that time, but which was given up to him; that he did not then dispute the amount due Fox & Co., and was not coerced into making the deeds and agreement; that Samuel H. Fox did not give at the time the reasons for making them alleged in the cross-bill; that the accounts of Fox & Co. were examined, and the amount agreed upon, and the deeds and agreement made, and six months allowed for I. Willard Fox to redeem, because he represented that he could do thenceforth a prosperous business by regaining his stock and store; that, between January and December, 1869, Fox & Co. shipped to him more than $12,000 worth of glass; that it was amicably agreed, in December, 1869, that the business should be closed; that $50,000 was not received from a sale of the stock of I. Willard Fox, between January and December, 1869, and whatever sum was received, was received and used by him; that the stock of goods was turned over to and taken possession of by Fox & Co., in December, 1869, and not before; that the best was done with it that could be done, and they realized from it only $27,343.07, which had been fully accounted for by glass furnished to and debts paid for I. Willard Fox by Fox & Co. between January and December, 1869; that such transaction did not materially reduce the amount due on the agreement; that when the store was finally closed no part of the glass was returned to Fox & Co., but the whole was sold and the total amount received is included in the sum before named; that I. Willard Fox is not entitled to be credited with any more money than the credit he has already received; that Sarah E. R. Smith paid full value for the La Salle Street

lot, and is entitled to be protected as a *bona fide* purchaser for value, without notice; that as Kate W. Goodwin has offered, by her amended bill, to allow to I. Willard Fox, upon her claim against him, the amount she received from the sale of the lot, the title should not be drawn in question in the suit; and that the lot was not involved in the pleadings at the time Sarah E. R. Smith purchased it, and therefore she was not a purchaser of it *pendente lite.*

On the 23d of December, 1880, a replication was filed to the answer to the amended bill.

On the 3d of January, 1881, Sarah E. R. Smith and her husband filed their answer to the cross-bill, averring that Sarah E. R. Smith took the conveyance of the La Salle Street lot, on her purchase of it from Kate W. Goodwin and her husband, without any notice of any rights or equities of the plaintiffs in the cross-bill, and paid therefor $6625 in cash, which was its reasonable value, and paid it before the cross-bill was filed, and before any notice that any one else than Kate W. Goodwin claimed any interest in it; that the title to the lot was in no way involved in the pleadings in the cause at the time of such purchase, nor was the agreement of February 20, 1869, set forth in the cross-bill, nor did she or her husband have any notice thereof; and that they cannot be compelled to reconvey the lot, nor can they be in any manner affected by the state of accounts between I. Willard Fox and Fox & Co.

Replications to the two answers to the cross-bill were filed on the 5th of January, 1881.

On the 7th of January, 1881, an order was made in the original and cross-suits, referring the cause to Mr. Henry W. Bishop, as a master, to take evidence, and to make and state an account between Fox & Co. and I. Willard Fox, and to report the same, with his findings, to the court.

Under this order of reference, the master took proofs in February, 1881, May, 1881, and July, 1881, a third deposition of Robert B. Merritt being taken in May, 1881, and a fourth deposition of I. Willard Fox in July, 1881.

On the 30th of November, 1881, the master filed his report, as follows:

" This proceeding is brought for the foreclosure of a mortgage executed by I. Willard Fox upon certain real estate known as the Lake Zurich farm, in the county of Lake and State of Illinois, and lot two (2), in block twenty (20), in Bushnell's Addition to Chicago, which was given for the purpose of securing the payment of sums of money therein mentioned, which it is alleged had become due the firm of Samuel H. Fox & Co. as the result of certain business relations between them extending through a number of years, and which are set forth in detail in the bill.

" The answer of the defendant admits the execution of the mortgage and the agreement supplemental to it, but undertakes to explain the circumstances under which they were made, and denies that at the time of their execution any such sum as is therein claimed was due and owing from him, and that, by reason of what has since occurred, any such indebtedness whatever exists against him, and avers that, upon a proper settlement of account, there will be shown to be a balance in his favor.

" It is for the purpose of examining and stating this account that a reference was made to me by the court.

" It is not necessary for me to review the earlier relations between the parties, culminating in the establishment of the separate business of I. Willard Fox in Chicago, or to examine their accounts prior to their attempted adjustment in February, 1869, showing the sum of nineteen hundred and twenty-three and fifty-three hundredths dollars due upon the individual account of I. Willard Fox, and the sum of sixty-eight thousand two hundred and seventy-seven and fifty-eight hundredths dollars due upon the glass account.

" These debit sums are conceded to be correct, as well as the payment by Fox & Co. to the creditors of I. Willard Fox of the sum of ten thousand nine hundred and seventy-one dollars and thirty cents, making at that date a total sum of eighty-one thousand one hundred and seventy-two and forty-one hundredths dollars ($81,172.41) due from I. Willard Fox to Fox & Co.

" This was the state of the account in February, 1869, when

I. Willard Fox became embarrassed in business. The First National Bank, his largest creditor, having obtained a judgment against him, levied upon his stock of goods and closed his store, an arrangement was made between him and Fox & Co., resulting in the settlement by them of all the claims against him, except their own, at a compromise rate, and the business was resumed, with Ethan Allen Fox, the uncle of the defendant, and I. Willard Fox, in charge. After the settlement made with the creditors of I. Willard Fox, and the restoration of the property from the seizure of the First National Bank, and the resumption of the business, and between March 23d and November 5th, 1869, additional shipments of glass were made, amounting in the aggregate to the sum of twelve thousand nine hundred and ninety-nine dollars and sixty-three cents ($12,999.63); and it is insisted that these consignments were also made to I. Willard Fox, and that this amount should be added as a further indebtedness against him.

"Upon the other hand, it is contended that, in February, 1869, and before the receipt of these shipments, all the business and property was turned over to Fox & Co., and I. Willard Fox and Ethan Allen Fox placed in its management, under the direction of Fox & Co. and their control. Samuel H. Fox swears that these shipments were made to I. Willard Fox and formed part of his stock, the remnant of which was turned over to him in December following, at which time he insists that the final adjustment was made, while Ethan Allen Fox and I. Willard Fox, who were in charge and remained there until the stock was all disposed of, swear that the goods received after February were not billed to I. Willard Fox and not purchased by him; and I can find no entries in the books of Fox & Co. showing that they were ever charged to him, but they do show they were consigned to Samuel H. Fox.

"A. St. John Campbell and Robert B. Merritt, book-keepers and clerks at and after the change of possession, swear that it occurred in February, Samuel H. Fox assuming general charge and conduct of the business from that time; and there is no testimony contradicting it except that of Samuel H. Fox himself, who swears that the change did not take place until December following.

"'The fact that an inventory was made of the stock in January preceding, and that none was made afterwards, seems to me to be a strong circumstance tending to show, in connection with the conduct of the parties and the testimony of Ethan Allen Fox and Merritt, that it was in February and not in December that the property was turned over.

·"' I can find nothing in the record, outside of the testimony of Samuel H. Fox, to justify any other conclusion, and I therefore disallow that item of complainant's claim, leaving due from I. Willard Fox at this date — February 1st, 1869 — the sum of eighty-one thousand one hundred and seventy-two and forty-one hundredths dollars ($81,172.41), subject to such deductions as shall hereafter appear as proper to be made.

" In this amount is included the sum of seven thousand seven hundred and ·eighty dollars and eighty cents ($7780.80) interest, which it is claimed was erroneously charged, and which I deduct from the amount stated, for the reason that the testimony does not, in my estimation, justify its allowance. It does not appear that there was any arrangement by which interest was to be charged, and the four entries of interest which appear upon the books of Fox & Co. are shown to have been made after the accounts were closed, and do not harmonize with the statements of S. H. Fox in respect to this matter.

" This charge seems to me also not to have been in contemplation with the parties, in view of their personal relations and the history and general character of their business, which, although not appearing to me to have been strictly of a commission character, seemed to partake somewhat of that nature, Fox & Co. all along making use of I. Willard Fox to dispose of the goods sent him, without such regard to the orders sent them as would prevail with persons dealing together under different circumstances and relieved of their peculiar relations.

" Throughout all this time, also, the business of I. Willard Fox seemed to be limited to the supply furnished him from this firm, and I can refer to but one or two instances where he resorted to other sources to enable him to meet the demands of his trade.

" During the entire period of this account I find no evi-

dence of any settlements having been made or anything done
between the parties out of which any claim for interest could
have arisen, and it does appear to me that, in view of the
fact of I. Willard Fox having been limited, in the supply sent
him by Fox & Co., to such kind and sizes of glass as they
chose from time to time to ship, it could not have been ex-
pected of him to pay interest upon the necessary delay and
vexation to which he is shown to have been subjected in dis-
posing of goods selected to suit the convenience of Fox & Co.,
and not necessarily demanded by this trade; and there is no
evidence tending to show that this was expected of him.

"In addition to this credit I have allowed one of ten per
cent for breakage of glass, and for stained glass, and cutting
down glass into smaller sizes. While the testimony very
clearly establishes an allowance in favor of this item, the wit-
nesses are not united upon the amount proper to be deducted
under this head. It is, however, clear to me that, the con-
signors having sent glass to the defendant all along without
reference to the kind ordered, making it necessary for him to
constantly cut down to suit his trade, a credit should be made
to this extent in his favor, and this is the smallest amount
justified by the evidence. Upon this item of account a credit
of seven hundred and fifty-five dollars and eighty-two cents
($755.82) appears upon the books of Fox & Co. to have been
made, leaving the sum of eighty-four hundred and forty-three
dollars and thirty cents ($8443.30) to be deducted from the
amount already reported.

"In addition to this an allowance should be made for the
property turned over to Fox & Co. by I. Willard Fox when the
latter is shown to have entered into possession of the store,
with Ethan Allen Fox and I. Willard Fox in charge.

"This property consisted of glass, evidences of indebtedness,
paints, oils, etc., and fixtures, together with what is known as
the Merritt mortgage, amounting to a complete transfer of
the entire stock and business of I. W. Fox.

"Samuel II. Fox conducted the negotiations for Fox & Co.,
and says that it was a 'mutual' arrangement between the
parties, and there is no evidence tending to show that it was

not one entirely satisfactory. No inventory, however, was then taken of the goods and no appraisement of the bills receivable.

"The fact that none was made inclines me to believe that the one taken in January previous was relied upon as all that was necessary for this purpose, and the testimony of the witnesses in charge of the store at that time, and by whom the only inventory was taken, tends to establish that as the basis upon which the parties must have proceeded. It is hardly possible that I. Willard Fox, having at last been relieved from all the pressing demands upon him aside from the claim of Fox & Co., should have finally surrendered this large amount of goods and securities to be credited in return for whatever it might bring in other hands.

"There is nothing in the testimony of Samuel H. Fox to show the value of this property, and all the information which we have upon this point is the testimony of the defendant, himself, supported by the evidence of Ethan Allen Fox, Robert B. Merritt, the book-keeper, A. St. John Campbell, and other witnesses having relations to the business, and to a greater or less extent of the same import.

"All of these witnesses concur in fixing the amount of the inventory of goods and accounts at between sixty and seventy thousand dollars, no one of them placing it less than the former sum, and it is shown that the accounts were all collectible.

"The division made by the witnesses, taking the lowest respective amounts, shows the glass to have been worth thirty thousand dollars ($30,000); the paints, oils, etc., fifteen thousand dollars ($15,000); notes collectible, fifteen thousand dollars ($15,000); the fixtures, fifteen hundred dollars ($1500) (at which they were sold); and the Merritt mortgage, twenty-one hundred and one and sixty-one hundredths dollars ($2101.61).

"If this testimony is to be relied upon, and assuming that the stock was taken possession of, as all the defendant's witnesses agree in stating, on the 1st day of February, 1869, then, in the absence of other preponderating evidence, these figures must be adopted in estimating these credits, except in the

single item of paints and oils, where I think a reduction from fifteen to twelve thousand dollars should be made.

" It is contended that the books of I. Willard Fox and the inventory made by him would exhibit still larger credits than these even, and their destruction by fire is a misfortune which must always be felt in determining the exact relations between these parties, but it is a fortunate circumstance that the witnesses and parties to these transactions still survive, furnishing, as far as they do, the information upon which this account must be stated.

" On the other hand there is absolutely no testimony whatever offered as to the value of the property when it is claimed to have been turned over. Samuel H. Fox swears that he had no knowledge whatever as to it, and the only information coming from the complainant upon this subject is derived from the account upon the books of Fox & Co., with I. Willard Fox, showing that from the stock, fixtures and notes and accounts there was realized the gross sum of twenty-seven thousand three hundred and forty-three and no hundredths dollars.

" An examination of this account, however, shows that it is but a partial one, and does not fully account for all that was turned over to Fox & Co., and is essentially wanting in the specific information to which the defendant would be entitled if he was bound by such independent disposition of the property as Fox & Co. chose to make of it.

" It is contended upon the part of the defendant, that he is not so bound, and that the complainant must account for all the property he received, at the prices which they were then shown to be worth.

" It seems to me that this is peculiarly a case where that rule should be applied, and the careless and incomplete manner in which the accounts were kept by Fox & Co., after their receipt of the property, renders such application absolutely necessary in stating this account. I can see no other course left to adopt, and have therefore credited the defendant with those five items modified in the way stated, which leaves a balance due the complainant of four thousand three hundred and

forty-six and seventy one-hundredths dollars ($4346.70), ending with December, 1869.

"I append hereto a statement, marked Exhibit 'A,' which shows the account stated:

"Exhibit 'A.'
"I. Willard Fox to Fox and Company.
"Dr.

| | | |
|---|---:|---:|
| "To due on personal account . . . . . . . . . | $1,923 | 53 |
| " "    "    " glass account . . . . . . . . . | 68,277 | 58 |
| " " paid in settlement with creditors . . . . . | 10,971 | 30 |
| | $81,172 | 41 |

"Cr.

| | | |
|---|---:|---:|
| "By interest included in glass account improperly . . . . . | $7,780 | 80 |
| "Damages from breakage, stained glass, and cutting down (less $755.82, already allowed), and estimated at ten per cent . . | 8,443 | 30 |
| "Notes shown to have been collectible . . . . . . . . . | 15,000 | 00 |
| "Paints, oils, etc. . . . . . . . . | 12,000 | 00 |
| "Fixtures sold . . . . . . . . . | 1,500 | 00 |
| "Merritt mortgage . . . . . . | 2,101 | 61 |
| "Glass returned at date of settlement | 30,000 | 00 |
| | 76,825 | 71 |
| "Leaving a balance due complainant . . . | $4,346 | 70 |

"I further find, from the evidence, that, on the fifth day of November, A.D. 1875, Henry W. Fox, his wife joining, executed a mortgage upon the 582 acres of the land included in the mortgage sought to be foreclosed in this proceeding, and known as the Lake Zurich farm, to secure the payment to one Loring Monroe, of the State of New York, in six years, with interest semi-annually, and at the rate of seven per cent, and which is a subsisting lien upon said property.

"It is agreed between the counsel that the full amount of

said loan is due from Henry W. Fox, with interest from the 5th day of May last, leaving due at this date, as a charge upon said property, the sum of twelve thousand dollars for the principal, and four hundred and sixty-nine dollars for interest thereon, or a total sum of twelve thousand four hundred and sixty-nine dollars ($12,469)."

That report was made in the original suit.

On the 21st of December, 1881, the plaintiff in the original suit filed the following exceptions to the report of the master:

"First exception. For that the said master refused to suppress the depositions of the defendants, I. Willard Fox and Eleanor Fox, but, on the contrary, treated their testimony as competent and relied upon it in making his findings in this case.

"Second exception. For that the said master refused to allow in favor of complainant, and against I. Willard Fox, the sum of $12,999.63, being the amount of glass shipped by Fox & Co. to I. Willard Fox, and received by him, between March 26th and November 5th, 1869.

"Third exception. For that the said master improperly disallowed the sum of $7780.80 in interest which had accrued before February, 1869, and failed to allow to complainant any interest since that time.

"Fourth exception. For that the said master disregarded the contemporary documentary writings and agreements made by the parties, and the oral testimony confirmatory thereof, and upon the mere opinions of witnesses improperly allowed to defendant, I. Willard Fox, credit for the following amounts, to wit:

"1. The sum of $8443.30, damages from breakage, stained glass and cutting down, estimated at ten per centum.

"2. The sum of $15,000 for notes shown to have been collectible.

"3. The sum of $12,000 for paints, oils, etc., turned over to Fox & Co.

"4. The sum of $1500 for fixtures sold.

"5. The sum of $2101.61 for the Merritt mortgage.

"6. For $30,000 for glass returned at the date of settlement.

"Fifth exception. For that the said master, while charging

the firm of Fox & Co. with the whole value of the stock in the store of I. Willard Fox, makes no allowance of any part of the sum of $23,970.99, being the amount of the account of Fox & Co. against I. Willard Fox between February and December, A.D. 1869."

On the 3d of January, 1884, the cause was heard on such exceptions, and on the pleadings and proofs. Before any decision was made, and on the 9th of June, 1884, the cause was referred to the same master to take proof and ascertain and report "the present value of the La Salle Street lot," and also to take evidence as to the amount due on the mortgage for $12,000, executed by Henry W. Fox to Loring Monroe.

In June, 1884, the master took testimony as to the matters so referred to him, and on the 11th of July, 1884, he filed his report, finding the then value of the La Salle Street lot to be $250 per front foot, and the value of the entire property, of fifty feet front, to be $12,500. The report says:

" The testimony of the witnesses upon this point varies from $225 to $300 per foot. The average value as established by the defendants' witnesses would be $285 per foot, and the average value as established by all the witnesses would be $230 per foot; but in estimating this value I have taken more into consideration the opinions of witnesses who have shown a larger familiarity with this property and that adjacent to it, and whose dealings in connection with the property have been more extensive and of a more recent date, and as the result of this I have come to the conclusion stated."

The report also found that there was due, June 9, 1884, on the mortgage of May 5, 1881, executed by Henry W. Fox and his wife to Loring Munroe, on the Lake Zurich farm, $15,059, being for principal $12,000, and for interest $3059.

The plaintiff in the original suit filed exceptions to the last named report, as follows:

" 1st exception. And now comes the said complainant, Kate W. Fox, by Charles H. Wood, her solicitor, and excepts to the finding of the said master that the said La Salle Street lot is of the value of $12,500, and for cause of exception showeth

OCTOBER TERM, 1888.

Opinion of the Court.

that the said finding is wholly insufficient upon which to found a decree for the reasons.

"(1) That the agreement between the defendant, I. Willard Fox, and Fox & Co. of February, 1869, and the deed of this lot made by the former in pursuance thereof, were absolute and unconditional, and no right of redemption attached to that property;

"(2) That I. Willard Fox having conclusively admitted that he owed at the time of said agreement the sum of seventy thousand dollars, as the court has found, the lot was fully paid for at that time, and to charge the complainant with the present value of the lot is to cause her to lose the interest on its value from that time to the present, as well as all taxes that she has paid.

"2d exception. For that the master should have found the value of the lot in February, 1869, when the deed to it was made, or at least in February, 1875, when the complainant acquired it, for otherwise, although fully paid for, the complainant would have the burden of carrying the property, while the defendant, I. Willard Fox, would get the whole benefit of it.

"3d exception. For that the said master should not have found the present value of the lot without also having found the interest on its value since February, 1869, and the taxes thereon since paid by the complainant, and deducted the same from its present value.

"4th exception. For that the master erred in finding the amount due upon the Monroe mortgage, because that mortgage cannot in any form be made a basis of any decree under the issues in this case, and because it does not appear who is the owner of said mortgage, nor is the owner a party to this proceeding, and because, if paid by this decree, the court cannot prevent the owner from foreclosing it in any proper form, since he is in no manner bound by this decree."

On the 29th of July, 1884, a decree was made, entitled in the original and cross-suits, and which found as follows: (1) That I. Willard Fox is indebted to Kate W. Goodwin, as the legatee and devisee of Henry W. Fox, deceased, in the sum of

$15,971.30 ; (2) that on the 20th of February, 1869, I. Willard Fox and his wife conveyed to Samuel H. Fox, by deed, the Lake Zurich farm and the La Salle Street lot; (3) that both of said deeds were made to secure said indebtedness, and are in the nature of a mortgage; (4) that on the 25th of September, 1875, Samuel H. Fox conveyed the farm and the lot to Henry W. Fox, who took the same with full knowledge of all the rights and equities of I. Willard Fox in the premises, and to whom the debt was at the same time transferred; (5) that, on the 5th of November, 1875, Henry W. Fox executed a deed of trust or mortgage on the Lake Zurich farm, to secure the payment of $12,000 which had been borrowed by him from Loring Monroe; (6) that there is now due on that loan $15,059; (7) that on the 1st of June, 1876, Henry W. Fox died testate and by his will bequeathed and devised the indebtedness and the farm and the lot to his wife, Kate W., who, since the commencement of the suit, has married Charles S. Goodwin; (8) that on the 7th of April, 1881 [1880], Kate W. Goodwin and her husband conveyed the La Salle Street lot to Sarah E. R. Smith, wife of Charles W. Smith, who acquired no better title or right, as against I. Willard Fox, than Kate W. Goodwin had; and (9) that there had been paid on the La Salle Street lot, for taxes, $565.33, which is chargeable to I. Willard Fox.

The decree then provided as follows : (1) That I. Willard Fox should pay into the registry of the court for Kate W. Goodwin, by the 1st of September, 1884, $16,536.63, with interest thereon at the rate of six per cent per annum, provided Kate W. Goodwin, or some one for her, should procure the release of the premises described in the deed of trust or mortgage to secure the debt of Loring Monroe, from all incumbrance created thereby ; (2) that, in default of such payment, I. Willard Fox and his wife should be barred and foreclosed of all right and equity of redemption " in said premises," and the master should sell the same ; that, in case a release of the lands described in the trust deed or mortgage should not be procured by the 1st of September, 1884, then I. Willard Fox should pay into the registry of the court, for Kate W. Goodwin, $1477.63, by the 1st of November 1884, with interest

thereon, at the rate of 6 per cent per annum, and, in default of such payment, the master should sell "the said lands," and I. Willard Fox and his wife should be barred and foreclosed of all equity of redemption "in said lands and lot;" and, in case I. Willard Fox should pay the $1477.63, he should also save and keep harmless the estate of Henry W. Fox from all liability on the debt to Loring Monroe, and should assume the payment of the indebtedness secured by the Monroe mortgage; (3) that, in case either the $16,536.63 or the $1477.63 should be paid, Kate W. Goodwin and her husband should convey, on or before November 1, 1884, to I. Willard Fox "the lands first hereinbefore described," subject to the Loring [Monroe] in- cumbrance, and Sarah E. R. Smith and her husband should convey to I. Willard Fox the La Salle Street lot; (4) that, in case of a failure to make such conveyances or either of them, the master should make them on behalf of Kate W. Goodwin and her husband, and of Sarah E. R. Smith and her husband, respectively; (5) that Sarah E. R. Smith might, if she elected, pay into court or to I. Willard Fox, $11,500, with interest at the rate of six per cent from July 29, 1884, by or before Oc- tober 15, 1884, the sum of $11,500 being found by the court "to be the present cash value" of the La Salle Street lot; and that, in case of such payment, Sarah E. R. Smith should be decreed to hold the lot thenceforward discharged from all equity of redemption of I. Willard Fox and all persons claim- ing under him. The decree charged I. Willard Fox with the costs of the cause.

On the 29th of September, 1884, an order was entered amending the decree by inserting provisions (1) that the first exception to the master's report be sustained, so far as it re- lates to the testimony of Eleanor Fox, and be overruled so far as it relates to the testimony of I. Willard Fox; (2) that the second exception be overruled; (3) that the third exception be sustained; (4) that the fourth exception be sustained so far as it relates to the item of $8443.30, damages for breakage of glass; (5) that the finding of the master as to the value of the glass, paints, oils, store fixtures and notes and accounts, turned over to Fox & Co. by I. Willard Fox, be modified and changed,

so that the value of the same be fixed at the sum of $65,000 instead of $60,601.60, as found by the master; (6) that the fifth exception be overruled; and (7) that the reports and findings of the master, except as so overruled or modified, be confirmed.

It appears by the record, that I. Willard Fox died on the 29th of August, 1884, leaving a widow and six children as his heirs at law, and a will by which he devised all his real estate to his widow for life, with remainder to his children; that, on February 26, 1883, he and his wife conveyed to William C. Goudy and Louie P. McDaid the La Salle Street lot; that no release was procured by Kate W. Goodwin, or any one for her, of the Lake Zurich farm from the mortgage to Loring Monroe; that Sarah E. R. Smith had not paid the $11,500 with interest; that there had been paid into court, by and before November 1, 1884, the $1477.63, for Kate W. Goodwin; that all the costs of the suit had been paid on behalf of the estate of I. Willard Fox; and that deeds had not been made by Kate W. Goodwin and her husband, and by Sarah E. R. Smith and her husband, as required by this decree.

On these facts, the court, by an order made January 13, 1885, substituted the widow and children of I. Willard Fox as parties in his place, and ordered that the master execute a deed, on behalf of Kate W. Goodwin and her husband, of the Lake Zurich farm, and also a deed to Goudy and McDaid of the La Salle Street lot. The master, on the 26th of January, 1885, reported that he had executed those deeds, the deed of the Lake Zurich farm being a deed to the widow of I. Willard Fox for her life, and a deed to his children in remainder; and the court, by orders made the same day, approved and confirmed those deeds. It also appears that, on the 4th of March, 1885, the court made an order granting a writ of assistance to put Goudy and McDaid in possession of the La Salle Street lot.

On the 20th of June, 1885, Kate W. Goodwin and her husband, and Sarah E. R. Smith and her husband, perfected an appeal to this court from the decree in the original suit and the cross-suit.

It is assigned here by the appellants for error, that the Circuit Court erred in overruling the first exception to the report of the master, of November 26, 1881, in so far as it relates to the competency of I. Willard Fox as a witness; in overruling the second exception to that report; in refusing to sustain the fourth exception to that report, as to the amount of assets of I. Willard Fox properly chargeable to Fox & Co., and in increasing the amount of the same as found by the master; in failing and neglecting to allow interest upon the sum due to the plaintiff in the original bill, subsequently to February 20, 1869; in overruling the first, second and third exceptions to the master's report of July 11, 1884, and in confirming that report; in overruling the fourth exception to that report; and in deducting by its decree the amount of the Monroe mortgage from the amount due to the plaintiff in the original bill.

As to the exception that the master refused to suppress the depositions of I. Willard Fox, and treated his testimony as competent, and relied upon it in making his findings, it nowhere appears by the record that any objection was made before the master to that testimony, or that any motion was made before him to suppress such depositions, or that any motion was made before the court to suppress them; and, as the only ruling of the court in regard to them was that the first exception should be overruled, so far as it related to the testimony of I. Willard Fox, it may very well be that the court overruled such exception because, it being an exception that the master refused to suppress the depositions, the court could not find as a fact that the master had refused to suppress them.

Irrespective of this, § 858 of the Revised Statutes of the United States does not apply to the present case. It reads as follows: "In the courts of the United States, no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried: *Provided*, That in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the

testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects, the laws of the State in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty." This section only provides that in actions by or against executors, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, unless called to testify thereto by the opposite party, or required to testify thereto by the court. Subject to this restriction, the section provides that, in the courts of the United States, no witness shall be excluded, in any civil action, because he is a party to, or interested in, the issue tried. I. Willard Fox, although a party to, and interested in, the issues tried in these suits, cannot be excluded as a witness on that account, unless the case is one covered by the proviso. The last clause of the section, which makes the laws of the State the rules of decision as to the competency of witnesses in the courts of the United States, in trials in equity, "in all other respects" means "in all other respects" than those provided for in so much of the section as precedes the word "*Provided*," and does not qualify the clause which forms the proviso. *Potter* v. *National Bank*, 102 U. S. 163.

In the present case, although Kate W. Goodwin was executrix of the will of her deceased husband, Henry W. Fox, she did not ask for a decree in her favor as executrix but she claimed an interest in the Lake Zurich farm and in the La Salle Street lot only as devisee of that real estate under her husband's will; and the final decree finds that I. Willard Fox is indebted to her, "as the legatee and devisee" of her husband, in the sum of $15,971.30. Moreover, the material transactions about which I. Willard Fox testified, namely, those relating to the instrument of February 20, 1869, and what took place after that date, were transactions between himself and Samuel H. Fox, and not between himself and Henry W Fox.

Before considering any of the other questions raised in the case, it is proper to determine whether either party can go behind the statement of existing indebtedness set forth in the agreement of February 20, 1869. That agreement was made between I. Willard Fox and Fox & Co., and is signed by Samuel H. Fox on behalf of Fox & Co. In it both parties state that I. Willard Fox is indebted to Fox & Co. in the sum of $70,000, "over and above all discounts and set-offs of every name and nature." It leaves uncertain the amounts paid or to be paid by Fox & Co., to cancel the other debts of I. Willard Fox, but it agrees upon the sum of $70,000 as the then existing indebtedness of I. Willard Fox to Fox & Co. It goes on to speak of that indebtedness as "said original indebtedness," and the supplemental paper signed by Samuel H. Fox speaks of "said debt of seventy thousand dollars." It must be held, that the parties to the agreement deliberately fixed upon that sum of $70,000, because the agreement states that, in making it up, the parties took into consideration "all discounts and set-offs of every name and nature." There is no sufficient or satisfactory evidence to impeach the agreement, as respects I. Willard Fox, on the ground that his signature to it was obtained by fraud or duress or without his full knowledge of its provisions and consent to its terms.

There is a great deal of testimony in the record bearing upon the question of the damages claimed by I. Willard Fox for the breakage of glass, and for "stained" glass, and for cutting down glass into smaller sizes, prior to February 20, 1869. The master allowed against Kate W. Goodwin the sum of $8443.30 for such damages; and also added to the credit side of the account of I. Willard Fox $7780.80, for interest which he found had been improperly included in the glass account, as a charge for interest accruing against I. Willard Fox prior to February 20, 1869. Kate W Goodwin excepted to the allowance to I. Willard Fox of the $8443.30, and the court sustained the exception and excluded that item. She also excepted to the disallowance to herself of the $7780.80, and the court sustained that exception also. This was, in effect, a ruling by the court that the parties could not go behind the

settlement of February 20, 1869, as to the $70,000. As the heirs and representatives of I. Willard Fox have not appealed from the decree, the action of the court in sustaining the exceptions as to those two items must, of course, stand. But it is rendered immaterial by the general view we take of the case.

It is contended by the appellants that the Circuit Court erred in overruling the second exception to the master's report, which was, that the master refused to allow, in favor of Kate W. Goodwin and against I. Willard Fox, the sum of $12,-999.63 [$12,999.69], the same being for the amount of glass shipped to I. Willard Fox by Fox & Co., and received by him, between March 26, 1869, and November 5, 1869. The date of March 26, 1869, is stated by the master in his report to be March 23, 1869. The master disallowed that claim of Kate W. Goodwin, on the view that, in February, 1869, and before any of such glass was shipped, all the business and property were turned over to Fox & Co., and they afterwards managed and controlled it; that the glass was not charged by Fox & Co. to I. Willard Fox as sold to him; but that the books of Fox & Co. show that it was consigned to Samuel H. Fox.

There is nothing inconsistent with the agreement of February 20, 1869, in the fact that the stock of goods in Chicago was turned over by I. Willard Fox to Samuel H. Fox, representing Fox & Co., in February, 1869, and that Fox & Co., from that time until December, 1869, carried on the business of the store at Chicago, I. Willard Fox representing them in the business as their agent. The agreement of February, 1869, states that I. Willard Fox "has sold and conveyed" to Samuel H. Fox the stock of goods and the store fixtures, notes, books and accounts, "with power forthwith, at such times and in such manner" as Samuel H. Fox should deem best, to sell and collect and convert into money, the goods, fixtures, notes and accounts, and apply the proceeds to the payment of the indebtedness to Fox & Co. This transfer being then made, and the business being afterwards carried on by Fox & Co. for themselves until December, 1869, it would have been entirely inconsistent with this arrangement that Fox & Co. should sell to I. Willard Fox the glass they sent him afterwards, prior to

the final discontinuance of the business in December, 1869. The weight of the evidence is also to the same effect. The master, therefore, on his view of the case, properly refused to allow in favor of Kate W. Goodwin the $12,999.69; and the exception to such disallowance, being the second exception to the master's report, was properly overruled by the court. But as this $12,999.69 of glass was represented by notes and accounts finally turned over by I. Willard Fox to Fox & Co., and the proceeds of which form part of the $27,343.07 credited to I. Willard Fox in the account hereinafter contained, it is proper to put the $12,999.69 on the debit side of that account.

The master disallowed the $7780.80 of interest which accrued before February, 1869, as having been improperly included in the glass account, for the reason that, in his judgment, the testimony did not justify its allowance, it not appearing that there was any arrangement by which interest was to be charged, and the four entries of interest which appeared upon the books of Fox & Co. being shown to have been made after the accounts were closed, and not harmonizing with the statements of Samuel H. Fox in respect to the matter; that the business between I. Willard Fox and Fox & Co., prior to February 20, 1869, partook somewhat of a commission character; that such business was mainly and substantially limited to the supply of glass furnished to I. Willard Fox by Fox & Co.; that during that time no settlements were made, nor was anything done, between the parties, out of which a claim for interest could have arisen; that the glass sent to I. Willard Fox by Fox & Co. was limited, as to kinds and sizes, to such as Fox & Co. chose from time to time to send; that, under such circumstances, it could not have been expected that he would pay interest for the time occupied in disposing of the glass; and that there was no evidence tending to show that Fox & Co. expected he would pay interest. As Kate W. Goodwin, by her third exception to the master's report, objected to his disallowance of the $7780.80 of interest, and the court sustained that exception and allowed that item of interest to her, and the heirs and representatives of I. Willard Fox have not appealed from the decree, the sustaining of that exception

must stand, but it is made of no importance by the disposition we make generally of the case. If interest were properly chargeable against I. Willard Fox on the items of his account prior to February 20, 1869, it must be regarded as having been included in the $70,000.

.The third exception also objects that the master failed to allow to Kate W. Goodwin any interest since February, 1869. The court sustained the third exception as to that branch of it also; and it is assigned here by Kate W. Goodwin for error, that the Circuit Court erred in failing to allow such interest. The effect of the ruling of the court, in sustaining the third exception, was to hold that the master improperly failed to allow to Kate W. Goodwin any interest after February, 1869. The court, however, in its decree, allowed nothing to her as interest for the time after February, 1869, or on any amount, or for any time. The master says nothing in his report about the question of interest after February, 1869. It is now contended, on the part of Kate W. Goodwin, that, as the agreement of February 20, 1869, admitted the sum of $70,000 to be due, and it was a liquidated demand at that time, it should draw interest either from that time or from the 20th of August, 1869, the expiration of the six months named in that agreement.

The statute of Illinois, § 2, c. 74, Revised Statutes of Illinois of 1874, which has been the law of Illinois since 1845, provides as follows: "Creditors shall be allowed to receive at the rate of six per centum per annum, for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another, and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

We think that, under this statute, Kate W. Goodwin is entitled to be allowed the legal Illinois rate of interest from August 20, 1869, on the $70,000 named in the agreement of that date, and like interest, from the proper dates, on the

amounts paid by Fox & Co. to take up and satisfy the other indebtedness of I. Willard Fox, from the time they paid such several amounts, and on the other debit items in the skeleton account hereinafter set forth; and that I. Willard Fox is entitled to be allowed like interest from the proper dates on the credit items in that account.

It is also assigned by Kate W. Goodwin for error, that the Circuit Court erred in refusing to sustain her fourth exception to the master's report, as to the amount of assets of I. Willard Fox, properly chargeable to Fox & Co., and in increasing the amount of the same as found by the master. The master found such amount to be $60,601.61, consisting of the items of $15,000 for notes shown to have been collectible, $12,000 for paints, oils, etc., turned over to Fox & Co., $1500 for fixtures sold, $2101.61 for the Merritt mortgage, and $30,000 for glass returned at the date of settlement. The court, in disposing of the fourth exception, modified the finding of the master, and fixed the value of the above-named five items, amounting to $60,601.61, at the gross sum of $65,000. It arrived at the amount of $15,971.30, stated in its decree as the indebtedness of I. Willard Fox to Kate W. Goodwin, by the following calculation:

Indebtedness fixed by the agreement of February
    20, 1869 . . . . . . . . . . . . . . . $70,000 00
Add the amount found by the master as paid by
    Fox & Co. to the creditors of I. Willard Fox . 10,971 30.

                                     $80,971 30
Deduct the value of the assets of I. Willard Fox . 65,000 00

         Balance . . . . . . . . . . . $15,971 30

To this sum of $15,971.30 the court added the $565.33 found by the master as having been paid by Kate W. Goodwin for taxes on the La Salle Street lot, making a total of $16,536.63, with which sum, and interest thereon at the rate of 6 per cent per annum from the date of the decree, July 29, 1884, it charged I. Willard Fox. The court did not charge to I. Wil-

lard Fox, the $1923.53 found by the master to have been due on his individual and personal account; nor did it credit him with the $7780.80 item of interest, or the $8443.30 for damages for breakage of glass, and for "stained" glass, and cutting down glass into smaller sizes. The debit item against I. Willard Fox, which the court put at $80,971.30, the master had put at $81,172.41.

We think it clear that the Circuit Court erred in giving credit to I. Willard Fox for the value of his assets as having been turned over to Fox & Co. in February, 1869, at the gross sum of $65,000. The terms of the agreement of February 20, 1869, were only that the goods, wares, merchandise, fixtures, notes, accounts and La Salle Street lot should be sold, collected and converted into money, and the proceeds be applied to the payment of the $70,000 and of the amount which Fox & Co. had paid or should pay to the creditors of I. Willard Fox. Therefore, I. Willard Fox is entitled to be credited only with the proceeds of the property mentioned in the agreement as having been sold and conveyed to Samuel H. Fox. The business of the store in Chicago, after February 20, 1869, must be considered as having been carried on by and on behalf of, and for the benefit of Fox & Co., through I. Willard Fox as their agent, with the stock of goods turned over to Fox & Co. at that date, and the goods which thereafter, and prior to December, 1869, they sent to I. Willard Fox for sale on their behalf. The credit by the master to I. Willard Fox of the $60,601.61, and the credit by the court to him of the $65,000, both of them proceed upon the erroneous view, that the value of the collectible notes, paints, oils, etc., fixtures, Merritt mortgage and glass were to be deducted as of the date of February 20, 1869, the date of the settlement, without regard to the sale or collection of them, or their conversion into money, or their proceeds. Fox & Co. were not chargeable with the value of the property turned over in February, 1869, but its proceeds were to be credited by Fox & Co. when they should be realized, the property to be disposed of at such times and in such manner as Samuel H. Fox should deem best. They did not agree to take the property at a fixed price, in February, 1869

or at any other time, aside from its proceeds.    Therefore, all the testimony as to the value of the property in February, 1869, must be rejected.    There is no evidence to show that Fox & Co. received any proceeds which they did not credit.

No specific error is assigned in regard to the overruling of the fifth exception to the report.

It is also assigned for error, that the Circuit Court erred in overruling the fourth exception to the report of July 11, 1884, and in confirming that report.    The master, in his report of July 11, 1884, found that there was due, on the 9th of June, 1884, upon the mortgage made by Henry W. Fox and his wife to Loring Monroe, covering the Lake Zurich farm, for principal and interest, $15,059.    The decree of the court was that the $16,536.63 should be paid by I. Willard Fox, provided Kate W. Goodwin should procure a release of such mortgage; but, in case the release should not be obtained, then I. Willard Fox might pay into court, for Kate W. Goodwin, $1477.63, being the difference between $15,059 and $16,536.63.    Kate W. Goodwin excepted to such report, as to the finding of the amount due upon the Monroe mortgage, because that mortgage could not, in any form, be made the basis of any decree under the issues in the case; and because it did not appear who owned the mortgage, nor was its owner a party to the suit; and because, if it were paid under the decree, the court could not prevent its owner from foreclosing it.    It is assigned by Kate W. Goodwin for error that the Circuit Court erred in overruling such exception, and in deducting, by its decree, the amount of the Monroe mortgage from the amount due to Kate W. Goodwin.    We think this assignment of error is not well taken, and that the exception to the report in that particular was properly overruled.

It is further assigned for error, that the Circuit Court erred in overruling the first, second and third exceptions to the master's report filed July 11, 1884, and in confirming that report.    Those exceptions relate to the La Salle Street lot, and to the fixing of its value at $12,500, as of the 9th of June, 1884.

We think that the Circuit Court, in charging Kate W. Good-

win and Sarah E. R. Smith, with $11,500, as "the present cash value" of the La Salle Street lot, committed an error. By the agreement of February 20, 1869, the conveyance of the lot to Samuel H. Fox, for Fox & Co., was absolute and unconditional, with no right of redemption attached to it, and it was in the same category with the personal property, and not merely subject to a lien, as was the Lake Zurich farm. It was conveyed to Samuel H. Fox, in February, 1869, by an absolute deed, and he and his wife conveyed it to Henry W. Fox on the 25th of September, 1875, for $8000. Under the agreement, Fox & Co. were not bound to apply the value of the lot, or its proceeds, until it was sold. By the amendment made to the bill November 13, 1880, Kate W. Goodwin offered to credit to I. Willard Fox the amount for which she had sold the lot. She had sold it on the 27th of April, 1880, to Sarah E. R. Smith, for $6625. But I. Willard Fox was entitled to a credit, as of the 25th of September, 1875, of the $8000 for which it was then sold to Henry W. Fox, and which the evidence shows was the full value of the lot at that time; and that credit must be allowed. That being done, of course Sarah E. R. Smith will retain the lot; and thus the appeal of herself and her husband in this case is disposed of. The decree provided that she might pay into the court $11,500, with interest, as "the present cash value" of the lot, and that, in case she should do so, she should hold the lot free from all equity of redemption by I. Willard Fox and all persons claiming under him; but that, otherwise, she and her husband should convey the lot to I. Willard Fox, or, on their failure to do so, the master should execute the conveyance instead. All the provisions of the decree in regard to Sarah E. R. Smith and her husband were erroneous, and her title to the La Salle Street lot must be confirmed.

On the foregoing views, we are of opinion that the proper mode of stating the account between the parties is as follows:

I. WILLARD Fox in account with Fox & Co.

Dr.

| | |
|---|---|
| Amount found due by the agreement of February 20, 1869 . . . . . . . . . . . . . . . . | $70,000 00 |
| Glass furnished by Fox & Co. to I. Willard Fox, between March 23, 1869, and November 5, 1869, and represented by notes and accounts turned over to Fox & Co. . . . . . . . . | 12,999 69 |
| Amount paid the First National Bank of Chicago, out of the proceeds of the property turned over to Fox & Co. . . . . . . . . . . | 10,000 00 |
| Amount paid the same bank, raised by a mortgage given on the La Salle Street lot . . . . . | 6,000 00 |
| Amount paid by Fox & Co. in settlement of other debts of I. Willard Fox . . . . . . . . . . | 10,971 30 |
| | $109,970 99 |

Cr.

| | | |
|---|---|---|
| Amount of proceeds received, and debited above as paid to First National Bank of Chicago . . . . | $10,000 00 | |
| Amount received as insurance money on the building on the La Salle Street lot, which amount was applied to pay off the mortgage, above mentioned, on the lot . . | 6,000 00 | |
| Proceeds of the sale of the La Salle Street lot, to Henry W. Fox . . | 8,000 00 | |
| Proceeds of sales of goods and other property by Fox & Co., and collection of notes and accounts turned over to Fox & Co. . . . | 27,343 07 | |
| | | 51,343 07 |

Balance due by I. Willard Fox to Fox & Co.     $58,627 92

Proper provision must be made to carry out our decision that the fourth exception to the report of July 11, 1884, was

properly overruled. To this end the amount of $12,000, as the principal of the mortgage to Monroe on the Lake Zurich farm, with the interest due upon it, must be deducted from the balance found due to Fox & Co., on the principle of the above account. In that event the Lake Zurich farm will be charged with, and will pay, the amount due on such mortgage.

The above items of debit and credit are principal sums, and interest must be calculated and added, at the proper rate, from the proper dates, as before stated. It may be, also, that there will be some items of taxes paid, to be adjusted.

It is manifest, that the Circuit Court credited I. Willard Fox with the gross sum of $65,000, as representing the collectible notes, the paints, oils, etc., the fixtures, the Merritt mortgage, and the glass in the store, February 20, 1869, instead of crediting him merely with the proceeds of those assets, when realized. The $10,000 paid to the First National Bank by Fox & Co. was paid out of such proceeds. The $12,999.69 of glass furnished by Fox & Co., after February 20, 1869, was represented by some of the $15,000 of collectible notes credited to I. Willard Fox by the master, and forming part of the $65,000 credited to him by the court; and yet no allowance was made to Fox & Co. for the $12,999.69 of glass so furnished.

It was proper that I. Willard Fox should pay the costs of he Circuit Court.

*The decree of the Circuit Court is reversed, and the case is remanded to that court with a direction to take such further proceedings as may be in accordance with law, and not inconsistent with this opinion.*