## DE BEAUMONT v. WEBSTER. [1]

### (Circuit Court of Appeals, Third Circuit. May 10, 1897.)

### No. 15, March Term, 1897.

1. COMPETENCY OF WITNESS—TRANSACTIONS WITH DECEDENT—INTERESTED PARTY.

   In the federal courts the competency of parties or interested persons as witnesses is controlled by Rev. St. § 858, and their testimony is not to be excluded thereunder in suits by or against administrators, etc., except as to any transactions with or statements by the deceased. 71 Fed. 226, affirmed.

2. CANCELLATION OF CONTRACTS—EVIDENCE.

   Complainants, owning certain patents, by a written agreement gave defendants, who were to furnish the capital and have an interest in the business, the "exclusive rights to the sales and management of all the business connected with the said patents," etc. Defendants, after carrying on the business for some time, presented to complainants' attorney a statement thereof, showing large losses. Shortly afterwards they received from him a letter saying that by his advice complainants had given to a certain third person "a power of attorney to act as their exclusive agent in all things pertaining to their rights and interests in" such patents. One of the defendants afterwards in a personal interview stated to the attorney that he considered this a cancellation of the agreement, and was assured that that was what it meant. *Held*, that this, together with the subsequent conduct of complainants themselves, showed a cancellation of the contract by their own act.

Appeal from the Circuit Court of the United States for the District of New Jersey.

[1] Rehearing denied June 28, 1897.

This was a suit in equity by Alexandre De Beaumont and Delia De Beaumont, his wife, against Warren Webster, a citizen of the state of New Jersey, for an accounting under a written contract dated March 21, 1887, between the said Alexandre De Beaumont on the one side and Warren Webster and Elwood S. Webster on the other. Elwood S. Webster died before the suit was brought. Alexandre De Beaumont had on July 7, 1887, assigned to his wife and co-complainant all his interest in the contract in question, to the use of himself and family. Alexandre De Beaumont died during the progress of the suit, and a suggestion of his death, and the appointment of his wife as administratrix of his estate, was duly made upon the ·record. The circuit court, after a hearing on the merits, dismissed the bill (71 Fed. 226), and the complainant has appealed.

Alexandre De Beaumont was the patentee of letters patent No. 187.825, dated February 27, 1877, for heaters and feeders for steam boilers, and of letters patent No., 199,038, dated January 8, 1878, for an improvement thereon. On January 31, 1887, he entered into a contract with Warren Webster and Elwood S. Webster whereby, in consideration of the sum of $15 per week as wages, and the further sum of $1 in hand paid by them, he agreed to allow them one-half the net profits arising from and growing out of the sales and adjustments made under these patents. The agreement provided that the Websters were to have the exclusive right to the sales and management of all the business connected with the sales and adjustment of said patent, and were to contribute all necessary capital. Business was begun under this agreement, but it shortly appeared that certain third parties, Palmer and Garratt, claimed title to the patent under an assignment from De Beaumont. Thereupon the contract of January 31, 1887, was canceled; and at the request of De Beaumont the defendant Warren Webster purchased with his own funds the outstanding interest in patent No. 187,825, and took an assignment thereof in his own name. A new contract was then made, dated March 21, 1887, between De Beaumont and the Websters, by which it was provided that the Websters "shall have the exclusive rights to the sales and management of ·all the business connected with the said patents, including · sales to the right to the same in such localities as may by them, the said Warren and· Elwood S. Webster, be deemed advisable; they to contribute so much capital as may be necessary for the prosecution of the business." The consideration of this contract was recited to be the before-mentioned purchase of the outstanding 'interests in the patent, and the sum of $15 to be paid weekly by the Websters to· De Beaumont for wages. De Beaumont agreed to allow each of the Websters one-third of the net profits of the business, which profits were declared to consist of the amount of money received, less all expenses incident to the prosecution of the business, including all the items for wages, labor, work, and duties performed in and about the business.

Under this new contract business was carried on for some time. De Beaumont claimed to cover by his patent, No. 187,825, the vacuum system of steam heating known as the "Williames System," and for which patent No. 256,089 was issued to Napoleon W. Williames; and suit was ·brought by Webster against Williames on March 15, 1887, for infringing the De Beaumont patents. Subsequently Mr. Webster was notified that he was infringing upon the Williames patent, and on January 3, 1888, Williames brought suit for infringement against De Beaumont and Webster jointly. Under these circumstances the business did not prosper, and prior to January 6, 1888, the Webster brothers submitted a statement of the business done under the contract, showing a loss of several thousand dollars, to Thomas B. Harned, De Beaumont's attorney. On that date Harned acknowledged the receipt of the same in the following terms: "I received the statement and am very much surprised at it. I will call and examine the books some time next week. The result is very unsatisfactory." Thereafter the Websters received the following letter from Mr. Harned:

"April 19, 1888.

"Messrs. Webster Bros.—Gents: By my advice Mr. De Beaumont and wife have given George A. Barnard, of New York, a power of attorney to act as their exclusive agent in all things pertaining to their rights and interests in

patents 187,825 and 199,038, and in the future he (Barnard) will give such interest his personal attention.

"Very resp'y, T. B. Harned, Atty. of Mr. & Mrs. De Beaumont."

To this letter the following reply was sent:

"Philadelphia, Pa., April 19th, 1888.

"Mr. T. B. Harned, Camden, N. J.—Dear Sir: Your letter of April 19th, '88, in the De Beaumont matter received. Is it writen by the direction of Mr. Alexandre De Beaumont? Until disputing any right of Mr. De Beaumont to take this action we would like to have such notices signed by him, and then there will be no question of authority.

"Very respectfully, Warren Webster."

Thereafter Mr. Webster received the following letter from Mr. Harned:

"Camden, N. J., April 21st, 1888.

"Dear Sir: Your letter of 19th is at hand. My letter of 19th was written by the direction of Alexandre De Beaumont. I am surprised that you should ask the question, inasmuch as you know I am his counsel.

"Mr. De Beaumont and wife have signed the power of attorney to Barnard, and my letter was written simply to inform you of that fact.

"Respectfully. T. B. Harned.

"Mr. Warren Webster."

After receiving this letter, Mr. Webster called upon Mr. Harned, and with reference to the interview then had, he testifies as follows: "Mr. Harned stated that the business had been entirely unsatisfactory, and that the transfer to Mr. Barnard was for the best interest of Mr. and Mrs. De Beaumont. He also stated that he wanted the statement of the business just as soon as it could be gotten out." Referring to the same interview, Mr. Webster further testifies: "He stated that the interests of Mr. & Mrs. De Beaumont were in the hands of Mr. Barnard, of New York, which I told him I considered a cancellation of the agreement, and wanted to know if that was what he meant, which he said it was, and which I accepted." Mr. Webster further testified that after April 19, 1888, De Beaumont did no further work for Webster Bros., and that they paid him no money thereafter as wages, and did no further business under the contract. It appears, however, that between that time and September 28, 1891, the Websters did install five steam-heating plants, and that on the latter date they accepted a license under the Williames patent, and have since been engaged in introducing the Williames system, and in granting licenses for the use thereof. The present suit was commenced in October, 1893, and it seeks an accounting in respect to the business in steam heaters, etc., carried on by the Websters, and by Warren Webster after the death of Elwood S. Webster, up to the filing of the bill. In the summer of 1893 the De Beaumonts also brought a suit against Napoleon W. Williames for infringement of the same two patents involved in the present controversy. The latter suit was dismissed after a hearing on the merits, the court holding that the De Beaumont patent, No. 187,825, did not cover the Williames system of vacuum steam heating, and in fact had no relation to any system of vacuum steam heating. See 80 Fed. 995. In the suit at bar the bill was dismissed, the court holding that up to the time the statement heretofore mentioned was rendered to Mr. Harned as the attorney for the De Beaumonts the business had resulted in large losses, and that the contract between De Beaumont and the Websters was canceled by the letters which passed between Mr. Harned and the Websters in April, 1888. Before the argument of the cause was entered upon, complainant's counsel presented a motion in writing to strike out the testimony of Warren Webster on the ground that his examination as a witness in his own behalf occurred after the death of Alexandre De Beaumont, and the substitution of his administratrix as a party plaintiff. The court held that only such testimony should be excluded as related to transactions with or statements by De Beaumont, and that other testimony given by Webster should be retained. The assignments of error were in full as follows: "(1) The learned judge erred in not striking out all of the testimony of Warren Webster. (2) The learned judge

erred in considering any of the testimony of Warren Webster. (3) The learned judge erred in finding that the letter of Mr. Harned, dated April 19, 1888, was meant to cancel the agreement between the parties upon which suit was brought. (4) The learned judge erred in finding that Mr. Harned had authority to cancel the agreement. (5) The learned judge erred in finding that Mr. and Mrs. De Beaumont knew and acquiesced in what Mr. Harned had done, and fully understood that the contract had come to an end. (6) The learned judge erred in finding that the contract was canceled. (7) The learned judge erred in finding that the business prior to April, 1888, resulted in loss. (8) The learned judge erred in not finding that the contract was in force after April, 1888, and up to the time of the filing of the bill, and that the plaintiffs are entitled to an account. (9) The learned judge erred in dismissing the plaintiffs' bill of complaint. (10) The learned judge erred in not finding that the defendant had continued to use the invention of the plaintiff A. De Beaumont, and that the plaintiffs are entitled to an account as prayed for in the bill."

David C. Harrington and Carrie B. Kilgore, for appellant.

Earnest Howard Hunter and E. Cooper Shapley, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and BUFFINGTON, District Judges.

ACHESON, Circuit Judge. The first assignment of error, namely, that the learned judge below "erred in not striking out all the testimony of Warren Webster," the defendant, and the second assignment, that he "erred in considering any of the testimony of Warren Webster," must be overruled. Undoubtedly the defendant was a competent witness except as to "any transaction with or statement by" the intestate, Alexandre De Beaumont (Goodwin v. Fox, 129 U. S. 601, 9 Sup. Ct. 367); and the court excluded from consideration all the testimony of this witness relating to such transactions or statements.

The third, fourth, fifth, sixth, and eighth assignments of error relate to the matter of the alleged cancellation of the written agreement between Warren Webster and Elwood S. Webster of the one part and Alexandre De Beaumont of the other part, dated March 21, 1887, and to the conclusions which the court reached, or should have reached, with respect thereto. Upon a careful examination of this record we are satisfied that there was competent and sufficient evidence to justify a finding that the agreement mentioned was canceled in the month of April, 1888. Thomas B. Harned, Esq., was then the legal adviser of, and acting as attorney for, Mr. and Mrs. De Beaumont with respect to that agreement, and to matters connected with it. By their express authority (as clearly appears), and in their behalf, Mr. Harned addressed to Webster Bros. the letter of April 19, 1888, in which he informed them that by his advice "Mr. De Beaumont and wife have given George A. Barnard, of New York, a power of attorney to act as their exclusive agent in all things pertaining to their rights and interests in patents 187,825 and 199,038, and in the future he (Barnard) will give such interest his personal attention." From this letter the defendant supposed—not unnaturally, we think—that Mr. and Mrs. De Beaumont, by constituting Mr. Barnard their "exclusive agent" in all matters relating to the named patents, intended to cancel their arrangement with Webster Bros. However, shortly after the

receipt of this letter, the defendant had a personal interview with Mr. Harned, and was then informed by that gentleman that the authorization to Barnard meant a cancellation of the agreement with the Websters. The defendant did not then, nor until long afterwards, see the power of attorney, but, had he known its contents, he might well have been confirmed in his understanding that Mr. and Mrs. De Beaumont thereby intended to terminate the agreement of March 21, 1887. That agreement invested the Websters with "the exclusive rights to the sales and management of all the business connected with the said patents, including sales to the right to the same in such localities as may by them, the said Warren and Elwood S. Webster, be deemed advisable." Now, the power of attorney authorized Barnard to act "in the sale or licensing of the patents of said Alexandre De Beaumont, Nos. 187,825 and 199,038." How this authority could be exercised by Barnard consistently with the continued enjoyment by Webster Bros. of the exclusive rights conferred upon them by the agreement of March 21, 1887, it is very hard to see. The clause in the power of attorney relating to that agreement may well be read as referring to past transactions under it. The case, however, by no means depends upon Mr. Harned's letter and verbal statement and the power of attorney alone. The after-conduct of all the parties in interest tends to sustain the defendant's allegation that the agreement of March 21, 1887, was canceled by Mr. and Mrs. De Beaumont with the assent of Webster Bros. Upon the clearly competent evidence, it is, we think, a fair deduction that no business was done on either side under the agreement after April, 1888. Again, the absence of any demand upon the defendant until July, 1893, is very significant. Such forbearance is inconsistent with a continuing contract with Webster Bros.

The conduct of Mrs. De Beaumont with respect to a certain circular deserves special mention. By a paper dated July 7, 1887, Mr. De Beaumont had assigned to his wife the agreement of March 21, 1887. Now, it appears that in the month of October, 1890, Mrs. De Beaumont came to the defendant's office, and left on his desk a copy of a circular purporting to be issued in her behalf and name by her husband. This circular relates to the above-named patents, and contains this notice: "No company or individual has any right to work these patents or negotiate for the same. I particularly notify all parties that Webster Bros. have no right to work these patents, or interest in the same." Now, if the agreement of March 21, 1887, was then in force, as the appellant now insists, there was no justification for that statement. This circular affords persuasive evidence that the agreement had ended. It is idle to suggest that Mrs. De Beaumont can neither write nor read. She must be presumed to have known the contents of a circular which purports to emanate from herself, and a copy of which she left at the defendant's office. Moreover, Mrs. De Beaumont was a competent witness to explain her own conduct, if it admitted of explanation; but she avoided the witness stand. Without further discussion of the evidence, we overrule all the assignments of error under this branch of the case.

The seventh assignment asserts that "the learned judge erred in

finding that the business prior to April, 1888, resulted in loss." We think, however, that the evidence fully justifies such a finding. The books show a loss of $7,618.17. Moreover, early in the year 1888 a statement showing a loss in the business was furnished to Mr. Harned, who undoubtedly represented Mr. and Mrs. De Beaumont in all this matter. That statement was retained, and no attempt has been made to impeach its correctness.

The tenth assignment alleges error in that the learned judge did not find "that the defendant had continued to use the invention of the plaintiff A. De Beaumont, and that the plaintiffs are entitled to an account as prayed for in the bill." This assignment is based upon a mistaken idea as to the scope of the De Beaumont patent, No. 187,825. We have considered and construed that patent in an opinion just delivered in the case of De Beaumont v. Williames, 80 Fed. 995. The parties to the agreement of March 21, 1887, entered into it, and operated under it while it remained in force, upon an entire misconception as to the scope of the De Beaumont patent. That patent has no relation to a system of vacuum steam heating as the parties to the agreement supposed. Some of the apparatus which Webster Bros. set up while they were yet working under the agreement of March 21, 1887, infringed patent No. 256,089, granted on April 4, 1882, to Napoleon W. Williames, for a heating apparatus, and the five plants which the defendant installed after April, 1888, likewise infringed that patent. For all these infringements the defendant has settled with Mr. Williames. The defendant had a perfect right to take a license from Williames at the time he did. The De Beaumont and the Williames inventions are distinct, and the Williames steam-heating apparatus does not infringe the De Beaumont patents. We have only to add here that we fail to discover any ground for holding the defendant accountable under this bill for feed-water heaters and purifiers manufactured by him under his own patents.

In answer to the remaining—the ninth—assignment, namely, that the court erred in dismissing the bill of complaint, little need be added to what has been already said. The complainants' right to an account accrued in the spring of 1888. An account was furnished to the representative of Mr. and Mrs. De Beaumont. That account showed a great loss in the business, as do the books of the concern. The account was retained, and has not been impeached. It is quite certain that nothing is due to the De Beaumonts on the business transacted under the agreement. This bill was not brought until October, 1893. Its real purpose was an accounting for an alleged liability arising from transactions after April, 1888. But, as we have seen, there is no ground for such accounting. The supposed liability never existed. The appellant is not entitled to any equitable relief, and the bill was rightly dismissed. The decree of the circuit court is affirmed.