BRITISH & AMERICAN MORTGAGE CO., Limited, v. WORRILL.

(Circuit Court, N. D. Georgia, W. D. February 20, 1909.)

1. DEEDS (§ 211*)—VALIDITY—MENTAL CAPACITY OF GRANTOR.
    Evidence *held* insufficient to impeach a conveyance made in Georgia of land there situated, on the ground of the mental incapacity of the grantor, under the settled rule of the Supreme Court of that state that to constitute such incapacity as will avoid a contract there must be an entire loss of understanding.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 638-640; Dec. Dig. § 211.*]

2. EXECUTORS AND ADMINISTRATORS (§ 181*)—WIDOW'S ALLOWANCE.
    Under Civ. Code Ga. 1895, § 2771, which provides that "whenever any person in this state conveys any real property by deed to secure any debt * * * and shall take a bond for titles back * * * upon the payment of such debt * * * such conveyance * * * shall pass the title of said property to the vendee till the debt * * * shall be fully paid, and shall be held by the courts of this state to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt," the fact that the holder of such a conveyance brings suit to foreclose the same as a mortgage in a federal court, as he may do, does not change its character to that of a plain mortgage, which, under Code Ga. 1895, § 2725, is only a security and passes no title, so as to let in the claim of the widow of the grantor to. an allowance for support out of the property, but such an allowance made in proceedings to which the grantee was not a party can apply only to the grantor's equity of redemption.
    [Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 181.*]

3. WITNESSES (§ 140*) — COMPETENCY—SUITS AGAINST PERSONAL REPRESENTATIVES OF DECEASED PERSONS—PERSONS INTERESTED IN QUESTIONS AT ISSUE.
    Neither the provisions of Rev. St. § 858 (U. S. Comp. St. 1901, p. 659), nor of Civ. Code Ga. 1895, § 5269, with respect to the competency of witnesses in suits against executors or guardians, render a witness incompetent merely because he may have an interest in a question at issue, where he is not a party to the suit.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598-618; Dec. Dig. § 140.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** WITNESSES (§ 159*) — COMPETENCY — SUITS AGAINST PERSONAL REPRESENTATIVES OF DECEASED PERSON—TRANSACTION WITH DECEASED.

One who acted as agent for a borrower in procuring a loan is not thereby disqualified under the law of Georgia to testify as a witness for the lender as to transactions between himself and the borrower relating to the loan, in a suit to enforce payment against the borrower's executrix.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 664, 666–669, 671–682; Dec. Dig. § 159.*]

**5.** WITNESSES (§ 140*)—COMPETENCY—INTEREST.

Nor is he disqualified for interest because employed as attorney for the borrower in the suit, where it does not appear that his compensation is dependent on the result.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598–618; Dec. Dig. § 140.*]

**6.** MORTGAGES (§ 581*)—FORECLOSURE BY SUIT—RIGHT TO ATTORNEY'S FEES.

A provision in promissory notes for the payment of attorney fees in case of collection by suit, valid under Laws Ga. 1900, p. 53, is enforceable although the holder brings a suit in equity to foreclose a mortgage securing the notes, instead of suing thereon at law, the attorney's fees being a part of the debt secured.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1670; Dec. Dig. § 581.*]

In Equity.

Wimbish, Watkins & Ellis, for complainant.

Olin J. Wimberley, for defendant.

NEWMAN, District Judge. This bill is brought by the complainant, the British & American Mortgage Company Limited, a foreign corporation, against Mrs. Carrie H. Worrill, guardian, and, by virtue of her office, administratrix on the estate of Bedford H. Worrill, deceased. Some preliminary questions of jurisdiction having been settled in this case, it was referred to Henry R. Goetchius, Esq., standing master at Columbus. There was a hearing before him, and his report filed. Exceptions to the report have now been heard and considered.

The bill was filed to foreclose as a mortgage a paper executed by Bedford H. Worrill in his lifetime. The paper was a deed to a tract of land in Stewart county, Ga., executed in pursuance of Civ. Code Ga. 1895, § 2771, upon the execution of which deed a bond for title was given to B. H. Worrill to reconvey the land upon the payment of a debt of $6,500, which the deed secured. The date of this transaction was November 30, 1903. In December, 1904, B. H. Worrill was adjudged a lunatic, and his wife, the said Mrs. Carrie H. Worrill, was appointed his guardian. Bedford H. Worrill died November 22, 1905, and, in accordance with the statutes of Georgia, Mrs. Carrie H. Worrill, by virtue of her office as guardian, became administratrix on her husband's estate. After the death of her husband, on February 5, 1906, Mrs. Carrie H. Worrill applied for a year's support, and the same was set apart for her in the lands conveyed to complainant, with the rents and profits thereof, and certain personal property.

Two main defenses are interposed in this case: The first is that, at the time the deed to secure the debt to the British & American Mortgage Company was made, B. H. Worrill was an insane person and incapable

of contracting. The second defense is that Mrs. Carrie H. Worrill's rights are superior to the rights of the British & American Mortgage Company, in view of the fact that all the property covered by the deed to the mortgage company has been set apart to her as a year's support.

On the question as to B. H. Worrill's sanity at the time the contract was made on November 30, 1903, the master heard a large amount of testimony, and discusses it extensively in his report. Some of the testimony heard by the master was professional testimony, but the greater part of it related to the acts and conduct of B. H. Worrill during the year 1903, and some of it for a short period prior to that time. The master says in his report:

"The main issue of fact in this case is whether or not Bedford H. Worrill, at the time this deed and these notes were executed by him, and this transaction as to the loan was consummated, was of sufficient mental capacity to enter into and understand his contract and undertaking. It is not denied that in January, 1905, his wife, the respondent, was appointed guardian, and duly qualified as such, of his person and property, after proper proceedings begun in December, 1904, in the court of ordinary of Stewart county, Ga., this appointment being made on the verdict of a jury that he was a person imbecile from infirmity and incompetent thereby to manage his property. He departed this life November 22, 1905, when about 56 years of age, and his wife, by virtue of her office as guardian, became administratrix of his estate. The evidence shows that he was afflicted with a disease known as 'progressive paresis,' and that this disease is insidious in its character, the symptoms being hardly perceptible in the incipiency, but more plainly marked as the disease progresses, the period varying, but averaging from three to five years. The testimony submitted on this issue was voluminous, and there was a very large number of witnesses introduced by both sides, there being 19 for complainant and 18 for respondent."

After discussing the testimony of the various witnesses which dealt with the question in the manner just stated, the master concludes his report on this part of the case as follows:

"Taking the entire and immense volume of evidence, very nearly all of which was submitted pro and con on the question of Worrill's capacity to contract, and reconciling the differences and conflicts as best I could, I have concluded that Bedford H. Worrill, up to the first part of the year 1903, was free from the disease which finally caused his death; that, if it existed prior to that time, its symptoms were not apparent; that possibly during 1903 these symptoms began to be apparent to the extent of accentuating his peculiarities, which had been more or less apparent prior to that time, but that he was fully competent to transact business during the year 1903, and for some time in 1904; that he felt somewhat financially embarrassed as far back as 1898, when he first applied for what was designated as the 'Hancock loan'; that the procurement of this loan and failure to pay the same, the failure of successive crops (he being engaged in farming), the expenditure of money for improvements on his place, the expense of maintaining a son at school and other demands, all coupled with a declining capacity to manage, which doubtless grew upon him in these later years because of the incipient and unknown progress of the disease, made it necessary for him to readjust his finances. This he began to attempt to do as early as the spring of 1903, and finally accomplished it at the date of this completed loan from complainant November 30 to December 19, 1903, the last date being the final balance to him of the money procured. Pending these transactions, and for several months in the year 1904, he managed his business as formerly, and performed the usual public service of a citizen, and for that purpose his mind was practically in a normal state. The paresis, which the evidence shows progresses by slow but by sure stages, did not appear to undermine his mental faculties entirely until the close of 1904. He was without question fully capacitated to make a legal and binding con-

tract from November 30 to December 19, 1903, and was competent to understand and comprehend the purport of his dealings with complainant and the contract into which he entered. I therefore find that on said dates he was mentally capacitated to make this contract and understand the full purport of his acts in executing and delivering this deed and the notes secured thereby, and in receiving the money paid as a loan to him by complainant in consideration of said deed and notes, and that he fully understood and directed the distribution of the proceeds of the loan."

The master in the latter part of his report adopts the rule announced by the Supreme Court of Georgia in Maddox v. Simmons, 31 Ga. 512, as to the degree of mental capacity necessary to make a valid and binding contract. In the opinion in that case by Judge Lumpkin, on this question, it is said:

"I assume, in the first place, that, to establish incapacity in a grantor, he must be shown to have been at the time non compos mentis, in the legal acceptance of that term; which means, not a partial, but an entire, loss of understanding. The common law has not drawn any discriminating line by which to determine how great must be the imbecility of mind to render a contract void, or how much intellect must remain to uphold it. Weakness of understanding is not, of itself, any objection to the validity of a contract. If a man be legally compos mentis, he is the disposer of his own property, and his will stands, for the reason of his actions. Jackson ex dem. Cadwell v. King, 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; Odell v. Buck, 21 Wend. (N. Y.) 142; Stewart v. Lispenard, 26 Wend. (N. Y.) 298 et seq.; Clark v. Fisher, 1 Paige (N. Y.) 171, 19 Am. Dec. 402; Blanchard v. Nestle, 3 Denio (N. Y.) 37; Osterhout v. Shoemaker, Id., note; Dean's Med. Jur. 555 et seq.; 2 Mad. Ch. Pr. et seq.

"To establish any other standard of intellect or information beyond the possession of reason, in its lowest degree, as in itself essential to legal capacity, would, as said by Senator Verplanck, in the great case already cited (Stewart's Ex'rs v. Lispenard, 26 Wend. [N. Y.] 255), create endless uncertainty, difficulty, and litigation; would shake the security of property, and wrest from the aged and infirm that authority over their earnings and savings which is often their best security against injury and neglect. If you throw aside the old common-law test of capacity, then proofs of wild speculation or of extravagant and peculiar opinions, or the forgetfulness or prejudice of old age, might be sufficient to shake the fairest conveyance, or impeach the most equitable will. The law, therefore, in fixing the standard of positive legal competency, has taken a low standard of capacity; but it is a clear and definite one, and therefore wise and safe. It holds, in the language of a late English commentator (Shelford on Lunacy, p. 39), that weak minds differ from strong ones only in the extent and power of their faculties; but unless they betray a total want of understanding, or idiocy, or delusion, they cannot properly be considered unsound."

The rule thus laid down has been approved in a number of cases by the Supreme Court of the state of Georgia, the last case being Barlow v. Strange, 120 Ga. 1015–1018, 48 S. E. 344, 345, in which it is said:

"In Maddox v. Simmons, 31 Ga. 512, 527, Judge Lumpkin used this language: 'I assume, in the first place, that, to establish incapacity in a grantor, he must be shown to have been at the time non compos mentis, in the legal acceptation of that term, which means, not a partial, but an entire, loss of understanding.' The rule thus laid down has been approved in two cases. See Nance v. Stockburger, 111 Ga. 821, 36 S. E. 100, and cit. There is no conflict between this rule and the one laid down in Frizzell v. Reed. Both recognize that, in order to avoid a contract on account of mental incapacity, there must be an entire loss of understanding. The first case recognizes it in terms, and the second in effect. For one who has not strength of mind and reason equal to a clear and full understanding of his act in making a contract is one who is afflicted with an entire loss of understanding."

This being a Georgia contract, and the lands conveyed to secure the debt being Georgia land, the law of the state must, of course, prevail,

and, applying the evidence and the facts found by the master from the evidence to the law as thus stated, there is no reason whatever for differing from the conclusion reached as to Bedford H. Worrill's capacity to contract at the time he executed the deed.

The next principal ground of defense raises this question: It is conceded that under the law of Georgia (Code 1895, § 2771 et seq.), in conformity with which this deed and bond to reconvey were executed, the title to the land vested in the British & American Mortgage Company, consequently the widow, Mrs. Carrie H. Worrill, would not have the right to a year's support out of the land except as to the equity redemption, her rights being subordinated to those of the British & American Mortgage Company holding the title. Section 2771, Code Ga. 1895, is as follows:

"Whenever any person in this state conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money or to secure any other debt, and shall take a bond for titles back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale, and take an obligation binding the person to whom said property was conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass the title of said property to the vendee till the debt or debts which said conveyance was made to secure shall be fully paid, and shall be held by the courts of this state to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage."

The contention is that, by electing to institute the foreclosure proceeding in this court, the complainant chose to treat this instrument as a mortgage. Under the law of Georgia, a mortgage is "only a security for debt and passes no title." Code Ga. 1895, § 2723. It was held in this court several years ago that the right to foreclose in this court existed where a deed and bond to reconvey had been executed under the state statute, as in this case (Tatum v. Ray [C. C.] 69 Fed. 682), and this was affirmed in the Circuit Court of Appeals in Ray v. Tatum, 72 Fed. 112, 18 C. C. A. 464. In a later case in this court, Merrihew v. Fort, 98 Fed. 899, the same question arose, and a similar ruling was made.

It is contended that the language used in the last-named case indicates that the court was of the opinion that the complainant, by electing to treat the instrument as a mortgage and to foreclose the equity redemption, yielded and waived his right to assert title, and chose to treat the deed as a mortgage, and, consequently, as a mortgage under the laws of Georgia. There is no question that the widow's right to a year's support would be superior to the rights of a mortgagee; that is, where the instrument is a mortgage, pure and simple, only creating a lien and vesting no title in the mortgagee.

It is equally true that where the transaction conforms to section 2771 et seq., where a deed is made and a bond to reconvey given, the title passing to the vendee, his rights would be superior to that of a widow's claim to a year's support. So that to sustain the contention of the defendant here it would be necessary to hold that by coming into the Circuit Court of the United States to foreclose the equity of

redemption, thereby treating the transaction as a mortgage, the complainant loses the right to claim title as security in it as it unquestionably existed before the foreclosure proceeding was instituted. I do not think so, nor was the language used by the court in Merrihew v. Fort intended to have any such effect. What was there stated was with reference to, and should be taken in connection with, the facts of the case then before the court. The right to treat the transaction as a mortgage, not asserting title in terms, was there in question, and the further right to resort to a court of equity, especially to the Circuit Court of the United States, instead of being restricted and confined to the remedy provided by the statutes of the state. Where a deed is made in pursuance of the state statutes to secure a debt, and a bond given to reconvey when the debt is paid, it is in effect a common-law mortgage by which the title vests in the mortgagee, subject only to the mortgagor's equity of redemption. The language used by the court in Merrihew v. Fort means no more than this.

Judge Bleckly in West v. Bennett, 59 Ga. 507, discussing this deed and bond to reconvey, with reference to homestead rights, says this:

"On what estate did the homestead proceedings take effect? On such estate as the debtor had in the land. That estate was purely equitable, and consisted of the right to redeem the legal title, on payment of the money as security for which he had passed that title to his creditor. When the right to redeem is in question, equitable principles are applied, and a deed, though absolute, will be treated as a mortgage. But thus dealing with it does not involve any concession that the legal title did not pass. It did pass, and for that very reason the necessity arises for invoking principles of equity. This was so before the act of 1871 (Code 1873, §§ 1969, 1971) was passed. That act was not required for the mere purpose of enabling a debtor to pass the legal title as security. It had further objects, one of which, as declared in section 1971 of the Code, was to prevent liens from attaching on the property while title was held by the vendee. Another object may have been to restrict the right of redemption to the time specified in the contract. Compliance with the contract 'according to the terms' thereof seems to have been contemplated. Perhaps, as the act originally stood, time was of the essence. Finally, it is not improbable that by virtue of the act the wife might bear some relation to the transaction under it which she would not bear to a similar transaction before the act was passed. Doubtless, she would be allowed to redeem the same as her husband. But one or the other must redeem, whether an absolute deed be made under the act, or under the law as it stood prior to this new legislation."

The effect of sustaining the contention of the defense in this respect would be to deny to persons taking a deed as security under the Georgia statutes the privilege of resorting to the Circuit Court of the United States without losing the best part of their security; that is, to have title to the property conveyed until the debt is paid. If the other jurisdictional facts exist, it is now clearly established that resort may be had to the Circuit Court of the United States in a case and by a procedure such as this. This being true, certainly the security held by the vendee should not in any way be weakened or lessened by doing so. The language of Judge Bleckly in West v. Bennett, supra, is particularly applicable. It is contained in what has been hereinbefore quoted, but the particular language to which I refer is to this effect:

"When the right to redeem is in question, equitable principles are applied, and a deed, although absolute, will be treated as a mortgage. But thus deal-

ing with it does not involve any concession that the legal title did not pass. It did pass, and for that very reason the necessity arises for invoking principles of equity."

I do not think this ground of defense can be sustained.

The action of the ordinary's court of Stewart county setting aside a year's support for Mrs. Carrie H. Worrill cannot have any effect on the rights of the parties here. Jurisdiction was taken of the case by the judge of the county court of Stewart county, the ordinary being disqualified by relationship. He appointed appraisers to set apart Mrs. Worrill's year's support, and they set apart for her as year's support, with certain other things, "all the right, title, and interest which B. H. Worrill had at the time of his death in and to" (the property in question here). As to this land, the only "right, title, and interest" which B. H. Worrill had at the time of his death was his equity of redemption, and it was only to this that the action of the ordinary's court could apply. It is true that the British & American Mortgage Company appeared in the ordinary's court and filed a caveat, and that then, by consent of counsel for Mrs. Carrie H. Worrill and the mortgage company, the case was appealed to the superior court of Stewart county. Subsequently, in the superior court, the British & American Mortgage Company, in writing, withdrew its caveat, and the judge of the superior court made the following order:

"The foregoing and dismissal and withdrawal by caveators is hereby allowed without prejudice to the legal or equitable rights of caveators against the lands and rents set forth in said return of appraisers for year's support to Mrs. Carrie H. Worrill as caveators with a deed, and just as if they had not filed said caveat."

This action in the superior court was certified back to the ordinary's court, where the same was recited in an order, and the return of the appraisers approved and made the judgment of the ordinary's court. The British & American Mortgage Company not being a party to the proceeding when the final order approving the appraisement and allowance was made, the result, of course, is that its rights are unaffected by the judgment allowing the year's support to Mrs. Carrie H. Worrill.

The defense contended before the master that certain witnesses introduced by the complainant were incompetent. What the master says on that subject, and the authorities cited by him, are so conclusive of the question raised that I content myself with quoting from his report:

"Was J. M. Stevens a competent witness for complainant? Respondent moved to rule out his evidence because it developed in the testimony that he himself had a suit pending in Stewart county superior court against this same respondent to foreclose a similar security deed on this same land. It was contended that he was interested, and therefore not competent to testify, inasmuch as the issue in this case was the sanity of Worrill when his deed was made. I find that this witness was competent, and I overrule objection to the suit. I do not think the admissibility of this evidence is governed by the state statutes, but rather by Rev. St. U. S. § 858 (U. S. Comp. St. 1901, p. 659). The proviso of the federal statute applies only to parties to the record, and does not exclude parties interested in a suit but not parties to the record. Berry v. Sawyer (C. C.) 19 Fed. 286, and especially Potter v. National Bank, 102 U. S. 165, 26 L. Ed. 111. Also De Beaumont v. Webster, 81 Fed. 535, 26 C. C. A.

494, and Goodwin v. Fox, 129 U. S. 601, 9 Sup. Ct. 367, 32 L. Ed. 805. But if the federal statute does not govern, I cannot see how this witness should be excluded under the state rule. He has no pecuniary interest in this suit. Should the complainant prevail or not, the result has no bearing whatever on his case. He is in no wise bound by any judgment here, or liable for cost or interested in the recovery in the case at bar. The pecuniary interest is the test of qualification. Code Ga. § 5269; Clements v. Western Lodge, 101 Ga. 62, 28 S. E. 494; Hawes v. Glover, 126 Ga. 310, 55 S. E. 62.

"Were Pinkston, James, and Miller competent witnesses for complainant?

"At the conclusion of the testimony of S. T. Pinkston, counsel for respondent moved to rule out all of his testimony on the ground that this is a suit defended by Worrill's administratrix, and Worrill being dead, and this witness being shown to have been the agent and representative of the complainant, he could not testify as to transactions between himself and Worrill. A similar motion was made as to T. T. James, and as to B. S. Miller. The master let in the testimony at the hearing, reserving his ruling till this report came to be made. James and Miller, it was shown, are counsel of record in this cause. The evidence nowhere discloses that either of these three witnesses at the time of the loan were acting other than as agents for Worrill. It is true that Miller communicated with complainant and indorsed a draft on it drawn by Worrill for the loan, and he secured the money from complainant by means of this draft; but his compensation for these and all other services was paid by Worrill, and so were those of James. The evidence does not disclose that Miller or James are entitled as attorneys to recover the 10 per cent. or any part sued for as attorney's fees, nor is there any evidence of any contract as to their fees in this case. Under an almost identical state of facts the Supreme Court of Georgia have ruled in the case of Merck v. American Freehold Mortgage Company, 79 Ga. 230, 7 S. E. 265 (second paragraph, opinion), that witnesses such as these were the agents of the deceased and not of the plaintiff. Witnesses of this character, under the evidence in the case at bar, as to complainant, may be classed as intermediaries, and especially is this true as to Miller.

"In the case above cited, supra, of Merck v. Mortgage Company, the court says: 'By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agents to make loans.'

"Also in the case of Jackson, Guardian, v. Bennett, 98 Ga. 106 (syllabi 1 and 2, 26 S. E. 53):

"'(1) An agent who procures for another a loan of money, the agent in this transaction not representing the lender, is not, upon the trial of an action brought by the lender upon a promissory note given for money borrowed, incompetent to testify in behalf of the plaintiff as to transactions between the witness as such agent and the borrower, relating to the procurement of the loan, or before the time when the same was granted, although the latter may have become insane (or died), and although the agent after the maturity of the note was by the lender employed as an attorney for its collection.'

"'(2) An attorney at law employed to collect a promissory note, and who has no contract with his client as to what fees will be charged, but expects to look to the client for reasonable compensation, is not interested in the case so as to disqualify him from testifying as a witness for the plaintiff. This is true although the witness may have testified that he had no other fee reserved except the 10 per cent. in the note sued upon. Taken altogether, the facts were not such as to disqualify him, it really appearing that his fee was in no way dependent upon the result of the case.'"

The notes given by B. H. Worrill to the British & American Mortgage Company provided for attorney's fees. It is contended here by the defendant that, because this proceeding for foreclosure was instituted instead of suing on the notes, counsel fees cannot be recovered. On this subject the master says:

"Attorney's fees are recoverable in this cause. They are as much a part of the contract as is any other provision therein, and the failure to pay on part of the obligor or his legal representative, and the resort to the court for collection, places the obligation to pay as a part of the debt. The statute provides how these fees shall be recovered. The notice required by law has been given as a foundation for this recovery, and the fact that this is a bill in equity to foreclose the lien of the debt does not take it out of the requirement of the statute and of the benefit resulting from notice of suit. Laws Ga. 1900, p. 53. See Harris et al. v. Powers, 129 Ga. 75 (8), 58 S. E. 1038."

This conclusion of the master is clearly correct. I see no reason whatever why complainant is not as much entitled to attorney's fees in a proceeding like this, as it would have been if it had brought suit on the notes.

All the exceptions to the master's report will be overruled, and the report confirmed. A decree may be taken in accordance with the report.